UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FELIX NKANSAH,

                                  *Plaintiff,*

      *-against-*

UNITED STATES OF AMERICA, and
JOHN DOES # 1–36 (U.S. Immigration and
Customs Enforcement Agents, individually and
in their official capacity)

                                 *Defendants.*
-----------------------------------------------------------------X

1:18-cv-10230-PAC

**<u>OPINION & ORDER</u>**

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiff Felix Nkansah ("Plaintiff," or "Nkansah") sues on the grounds that he was mistreated by Immigration and Customs Enforcement ("ICE") agents and officers; retaliated against for making complaints regarding ICE and the facilities where he was detained; and that he received no or inadequate medical treatment for injuries suffered in ICE custody, leading to grievous physical harm and a need for continuing medical care.

       Defendant the United States of America moves to partially dismiss the Complaint, specifically the claims against it regarding violations of Nkansah's constitutional rights, his medical care while in Alabama, false imprisonment and his December 2014 arrest. The United States' partial motion to dismiss is GRANTED in part and DENIED in part.

# BACKGROUND

I.  **Facts**[1]

According to the Complaint, Felix Nkansah, a citizen of Ghana, was arrested at his residence in East Orange, New Jersey on the morning of December 17, 2014.  (Complaint, Dkt. 1, ¶ 37).  He alleges a harrowing saga that spans the next fifteen months.  He was transported first to a New York field office for ICE, then to a facility on Varick Street in Manhattan before being taken to the Hudson County Correctional Facility ("HCCF") in Kearny, New Jersey.  (*Id.*).  Shortly after arriving at that facility Nkansah made a complaint alleging that unidentified ICE agents involved in his December 17 arrest had removed personal property including a laptop, more than $10,000 in cash, and a dog from his residence—none of which was ever recovered. (*Id.*).

Nkansah was still at the HCCF eight months later when, on August 10, 2015, he filed a grievance with ICE Enforcement and Removal Operations in New York alleging that funds sent by a non-governmental organization had never been distributed to him, and that an officer had denied him phone calls to legal counsel.  (*Id.* ¶ 38).  This officer threatened to transfer Nkansah from the HCCF to another facility far removed from Nkansah's family; on August 12 Nkansah reported this threat to other ICE agents and called an ICE Hot Line.  (*Id.*).  On the Hotline, Nkansah registered complaints regarding inadequate heat at the HCCF and the facility's failure

---

[1] These facts are taken from the Complaint, which the Court "accept[s] as true" and "consider[s] . . . in the light most favorable to the plaintiff" in "determin[ing] whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).  On a Rule 12(b)(1) motion, the Court "generally must accept the material factual allegations in the complaint as true," but "does not, however, draw all reasonable inferences in the plaintiff's favor." *Aguilar v. Immigration & Customs Enforcement*, 811 F. Supp. 2d 803, 822 (S.D.N.Y. 2011).

to treat an ear infection he had developed.  (*Id.* ¶ 40)

Five days after calling the ICE Hotline, Nkansah was transferred by unidentified ICE agents from the HCCF to a detention facility at 201 Varick Street in Manhattan.  Nkansah alleges that he was moved in retaliation for the complaints he made, and as a direct fulfillment of the threat to move him to a more distant facility.  (*Id.* ¶ 39).  Upon arrival at Varick Street on August 17, Nkansah was placed alone in a cell, where four or five ICE agents or guards then struck him, pushed him to the floor, and one forcefully pressed his knee into Nkansah's back.  (*Id.* ¶ 41).

Nkansah states that he did not resist the ICE agents; nevertheless, his hands and feet were shackled so tightly that he began to bleed, and he was lifted by a chain through the shackles, causing severe injury to his nerves.  (*Id.* ¶¶ 42–43).  Nkansah alleges that the ICE agents ignored his protests that the shackling and chain caused him severe pain to his upper and lower extremities, but that they did not adjust the shackles.  (*Id.* ¶ 43).  Nkansah alleges that the shackling and being lifted by the chain, and the guards ignoring his distress, caused severe and permanent nerve damage that was ultimately diagnosed as neuropathy.  (*Id.* ¶ 44).

After being restrained and shackled on August 17, a hood was placed over Nkansah's head, and he was transported in a van, bleeding and crying out in pain and fear, to Newark Airport.  (*Id.* ¶ 45).  He passed out while at Varick Street, and only briefly regained consciousness while on a plane, where ICE agents ignored his requests that they remove his hood.  (*Id.*).  Nkansah again alleges that he never resisted the ICE agents during this time.  (*Id.*).

When the plane landed in Louisiana, the hood was removed, but Nkansah was in such severe pain in his wrists and ankles that he was unable to walk off the plane on his own and needed to be taken off the plane in a wheelchair.  (*Id.* ¶ 47).  On August 18, he was transported to Etowah County Detention Center ("Etowah") in Gadsden, Alabama.  (*Id.* ¶ 46).  He was taken

to Riverview Regional Medical Center in Gadsden the next day for what Etowah described as generalized weakness attributed to a hunger strike—he was diagnosed at the medical center with malaise, anorexia, and depression. (*Id.* ¶ 48). Nkansah reported loss of feeling in his hands and feet and chronic earaches that had gone untreated, but his nerve damage complaints were not attended to. (*Id.* ¶¶ 48–49).

Nkansah remained at Etowah from August 19, 2015 to March 2016, during which time he did not receive medical care for his nerve damage. (*Id.* ¶ 51). He was unable to walk on his own, and required assistance to descend from the second floor of the facility where he was housed to see visitors or use the phone. (*Id.*). He alleges that he received no medical treatment despite repeated requests during the time he was detained at Etowah, and that when he was released he was left to make his way on his own and on crutches to the local bus station, from which he took a bus to Atlanta to meet his family. (*Id.* ¶¶ 51, 53).

Nkansah alleges that only on return to the New York City area did he receive appropriate medical care, and was diagnosed at Montefiore Medical Center with depression, post-traumatic stress disorder, and neuropathy. (*Id.* ¶ 54). He continues to suffer from pain in his arms and legs, apathy, anxiety, and sleep disorder, and he struggles to sit and walk and requires a cane—none of which afflicted him before his detention. (*Id.* ¶¶ 54–55). He requires ongoing medical treatment. (*Id.* ¶ 55).

## II.     Procedural History

Nkansah filed the Complaint on November 9, 2018 alleging claims against the United States and John Does numbers 1 through 36 under *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[2] for tort claims, and for violations under the Constitution and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. (Dkt. 1 ¶ 1).

Defendant the United States of America moved on August 23, 2019 to dismiss the claims against it regarding violations of Nkansah's constitutional rights (Claim IV), false imprisonment (Claim VI), his medical care while in Alabama (Claim VIII), and his December 2014 arrest (Claim XII). (Dkt. 21, at 1–2). The U.S. moves to dismiss for failure to establish subject matter jurisdiction and failure to state a claim on which relief may be granted. (*Id.*)

## DISCUSSION

### III. Defendant's Rule 12(b)(1) Motion

#### A. Legal Standard for Rule 12(b)(1) Motion

Defendants may challenge a court's lack of subject matter jurisdiction over a claim, which is "properly dismissed . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be either facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

When a defendant, as the U.S. here, mounts a factual attack on subject matter jurisdiction and advances evidence outside the pleading, the plaintiff can either "come forward with evidence of their own," or "rely on the allegations in the Pleading if the evidence proffered by the

---

[2] The Government admits it does not represent the John Doe defendants, yet invites the Court to dismiss the *Bivens* claims. (Dkt. 21, at 5 n. 2). The Court declines to do so on this motion. Further, the Government, without argument and in a footnote, states that Claims V (negligent infliction of emotional distress), VIII (medical negligence), IX (gross negligence in the hiring, training and retention of employees), and XII (negligent mishandling of bailment) should be dismissed outright. (*Id.* at 5 n. 3). Apart from the negligent mishandling of bailment claim, *see infra* Part III.C.3, the Court abstains here, as well—the dismissal of claims goes only so far as specified in this Order, and only extends to the United States.

defendant is immaterial." *Carter*, 822 F.3d at 57. In either event, "the plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017).

### B. Legal Standard for Constitutional and FTCA Claims

The United States moves under Rule 12(b)(1) to dismiss the Plaintiff's claim against it for alleged violations of Nkansah's Fourth, Fifth, and Eighth Amendment rights on the grounds it is barred by the doctrine of sovereign immunity. The U.S. also moves to dismiss Nkansah's FTCA claims related to his detention at the Etowah Detention Center, and the claims related to his December 17, 2014 arrest. (Dkt. 21, at 1–2).

### 1. Sovereign Immunity

The doctrine of sovereign immunity is long standing in American jurisprudence. *See Cohens v. Virginia*, 19 U.S. (Wheat) 264, 411–12 (1821) ("The universally received opinion is, that no suit can be commenced or prosecuted against the United States."). As relevant to Nkansah's case, sovereign immunity means that his claims against the U.S. cannot proceed unless Congress has expressly waived that immunity and subjected the U.S. to suit. *See United States v. Testan*, 424 U.S. 392, 399 (1976). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113 (internal citations omitted).

### 2. FTCA

The FTCA was enacted in 1946 and provides a limited waiver of the U.S.'s sovereign immunity, permitting (in the absence of an exception) suits against the U.S. for torts committed by "any employee of the Government while acting within the scope of his office or

employment." 28 U.S.C. § 1346; *United States v. Orleans*, 425 U.S. 807, 813–14 (1976); *Liranzo v. United States*, 690 F.3d 78, 84–85 (2d Cir. 2012). The definitions of "federal agency" and "employee of the government" are provided in 28 U.S.C. § 2671. "[W]aivers of sovereign immunity must be strictly construed and limited in scope in favor of the sovereign." *Cooke v. United States*, 918 F.3d 77, 82 (2d Cir. 2019).

There are a number of exceptions to the FTCA's waiver of liability, including, as pertinent here, an exception for independent contractors. 28 U.S.C. § 2671; *Orleans*, 425 U.S. at 815. Whether a party is an independent contractor, and so outside the FTCA's limited waiver, turns on the common-law test of "the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Logue v. United States*, 412 U.S. 521, 528 (1973). *See also Orleans*, 425 U.S. at 814–15.

28 U.S.C. § 2401(b) specifies that "[a] tort claim against the United shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."

## C. Application

### 1. Constitutional Tort Claims

The Government argues that the FTCA does not waive sovereign immunity for constitutional torts and therefore the Court lacks subject matter jurisdiction as to these claims. On the motion, the Plaintiff concedes in response that the FTCA's waiver only extends to tortious conduct for which there is a state analogue, and therefore "to the extent that this Cause of action is limited to constitutional violations, sovereign immunity is not waived." (Dkt. 31, at 13). Furthermore, "the United States simply has not rendered itself liable under [28 U.S.C.] § 1346(b) for constitutional tort claims." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994); *Hernandez*

*v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) ("The FTCA 'has not waived [the Government's] sovereign immunity with respect to claims that its employees have committed constitutional torts' under the federal constitution.") (quoting *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994).

Since Nkansah agrees with the Government on this point and the law compels it, the motion to dismiss as to the constitutional tort claims against the U.S. is granted.

## 2. Independent Contractor

The U.S. argues that Nkansah has failed to establish subject matter jurisdiction as to the FTCA claims arising from his treatment while detained at Etowah because the Etowah facility and Riverview Medical Center are independent contractors, placing them outside the limited waiver of sovereign immunity provided by the FTCA. (Dkt. 21, at 8–9; Pitman Decl., Dkt. 22, ¶ 3). The arrangement between ICE and Etowah is governed by an Intergovernmental Agreement ("IGA"). (Dkt. 22, Ex. A). The IGA provides that "the Local Government shall accept and provide for the secure custody, safekeeping, housing subsistence, and care of federal detainees," and that "[t]he Local Government shall provide federal detainees with the full range of medical care *inside* the detention facility." (*Id.* at 3–4) (emphasis added). The U.S. explicitly retains financial responsibility and power of pre-approval for all *outside* care provided to detainees. (*Id.*

at 4).[3]

This Court has previously encountered claims regarding medical care, or lack thereof, at a facility that contracted with ICE in *Harvey v. United States*, 14 Civ. 1787 (PAC), 2017 WL 2954399, at *1 (S.D.N.Y. 2017). As in *Harvey*, this Court is guided by the Second Circuit's decision in *Haskin v. United States*, 569 F. App'x 12, 15 (2d Cir. 2014). As in those cases, the relevant federal agency—here, ICE—delegated some but not all of its responsibilities to Nkansah through the IGA. (Dkt. 22, Ex. A. at 4; Dkt. 30 ¶¶ 16–20). *See also Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016) ("Only upon a finding that the government delegated its *entire* duty of care may the court dismiss the claim for lack of jurisdiction under the FTCA's independent contractor exception.") (emphasis in original). A reasonable jury could find that ICE's responsibilities as to any outside medical care that was or should have been received by Nkansah remained with ICE under the terms of the IGA, and that ICE had delegated "some [] but not all" of its duties regarding Nkansah's medical care to Etowah, while explicitly retaining other

---

[3] The portions of the IGA relevant to Nkansah's medical care read:

> The Local Government shall provide federal detainees with the full range of medical care inside the detention facility. The level of care inside the facility should be the same as that provided to state and local detainees . . . .

> The Federal Government is financially responsible for all medical care provided outside the facility to federal detainees. The Federal Government must be billed directly by the medical care provider not the Local Government . . . . The Local Government is required to immediately forward all medical claims for federal detainees to the Federal Government for processing . . . .

> All outside medical care provided to federal detainees must be pre-approved by the Federal Government. In the event of an emergency, the Local Government shall proceed immediately with necessary medical treatment. In such an event, the Local Government shall notify the Federal Government immediately regarding the nature of the federal detainee's illness or injury as well as the types of treatment provided.

(Dkt. 22, Ex. A, at 4).

duties.[4]  *Haskin*, 569 F. App'x at 15; *see also Edison*, 822 F.3d at 518 ("The independent contractor exception . . . has no bearing on the United States' FTCA liability for its *own* acts or omissions.") (emphasis in original).

The Court finds that it retains subject matter jurisdiction for claims arising from medical care Nkansah received or should have received from outside providers during his time at Etowah.  *See Harvey*, 2017 WL 2954399, at *4.   It would be inappropriate for the Court to dismiss these claims where there remain "genuine issues of material fact . . . concerning the alleged negligence of" ICE employees related to Nkansah's medical care while he was held at Etowah.  *Haskin*, 569 F. App'x at 15.  Dismissal of the claims related to Nkansah's medical care in Alabama is therefore inappropriate at this stage.

### 3.  December 17 Property Claims

The Government moves to dismiss Claim XII for negligent mishandling of bailment under the FTCA—the claims related to the alleged loss of Nkansah's property in the course of his December 17, 2014 arrest—on the grounds that he ran afoul of the 28 U.S.C. § 2401(b)'s two-year time bar by not filing his administrative tort claim until more than two and a half years after his arrest.  (Dkt. 21, at 12–13).

The Plaintiff responds that the clock did not begin to run on his negligent mishandling claim until he demanded the return of his property and it was not returned, and that this approach is required by New York law, which is said to apply here.  *See Pine Hill Concrete Mix Corp. v. Alto Corp.*, 25 A.D. 2d 608, 609 (N.Y. App. Div. 4th Dep't 1966), *aff'd* 19 N.Y. 2d 770 (1967). Nkansah argues that he requested that his property be returned or accounted for while still in

---

[4] The Government claims that ICE had no control over Etowah's decision to use Riverview Regional Medical Center as a provider of outside medical care, but this is contradicted by the plain terms of the IGA.  (Dkt. 21, at 12; Dkt. 22, Ex. A, at 4).

detention, but the Government is correct that he alleges no facts regarding when, how, or to whom this request was made. (Dkt. 31, at 20; Dkt. 34, at 6). The Government does not make any argument as to what underlying state law is appropriate for determining when the bailment claim began to run.

The Supreme Court has said that "the FTCA goes further than the typical statute waiving sovereign immunity to indicate that its time bar allows a court to hear late claims," and has made clear that 28 U.S.C. § 2401 permits equitable tolling. *United States v. Kwai Fun Wong*, 575 U.S. 402, 419–21 (2015). But Nkansah has not alleged facts in his Complaint regarding his purported request for the return of his property that permit the Court to retain subject matter jurisdiction. The Government's motion to dismiss Nkansah's negligent mishandling of bailment claims against it under the FTCA is granted.

## IV.    Defendant's Rule 12(b)(6) Motion

### A.  Legal Standard for Rule 12(b)(6) Motion

A defendant may move to dismiss any claim against it for which relief cannot be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018) (citing *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135 n. 11 (2d Cir. 2015)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[D]etailed factual allegations" are not required, but the plaintiff must put forward "more than labels and conclusions," and "a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Legal Standard for False Imprisonment or False Arrest Claim

The U.S. moves under Rule 12(b)(6) to dismiss Nkansah's false imprisonment claims against it on the grounds that he has not sufficiently pled that his detention was unlawful. "To recover under the FTCA, a plaintiff must show that a government employee committed a tort 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Watson v. United States*, 865 F.3d 123, 124 (2d Cir. 2017) (quoting 28 U.S.C. § 1346(b)(1)); *see also United States v. Olson*, 546 U.S. 43, 46 (2005) (stating that the FTCA "requires a court to look to the state-law liability of private entities . . . when assessing the Government's liability under the FTCA"). In other words, the FTCA requires that the alleged tortious conduct have a "private analogue" in the state where it occurred. *Watson*, 865 F.3d at 134.

The Government argues that the claim must be dismissed because Nkansah does not allege facts challenging the legality of his removal order, and so cannot demonstrate that his detention was unlawful as required by the tort law of any of the states involved: New Jersey, New York, Louisiana, and Alabama. The FTCA "explicitly permits claims for false imprisonment to be brought against the United States based on the acts of federal law enforcement agents." *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012) (citing 28 U.S.C. § 2680(h)).

In New Jersey, "[t]here are two elements to the tort [of false imprisonment or false arrest]: (1) an arrest or detention of the person against his will; (2) done without proper legal authority or 'legal justification.'" *Fleming v. United Parcel Service, Inc.*, 255 N.J. Super. 108, 155 (N.J. Super. Ct. Law Div. 1992) (citing *Barletta v. Golden Nugget Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J. 1984)). New York State requires that "'(1) the defendant intended to

confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). "To be privileged, the actions of the immigration officer must be reasonable and detention must be conducted in accordance with federal standards." *Polanco v. United States*, No. 10 CV 1705 (SJ) (RLM), 2014 WL 795659, at *4 (E.D.N.Y. Feb. 27, 2014).

Louisiana casts the tort as "the unlawful and total restraint of the liberty of the person." *Kelly v. West Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 750 (La. Ct. App. 1999); *see also Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) ("The tort of false imprisonment consists of the following two essential elements:  (1) detention of the person; and (2) the unlawfulness of the detention."). And Alabama by statute has defined false imprisonment as "consist[ing] in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170.

### C.  Application

The basis for Nkansah's false imprisonment or false arrest claim against the U.S. is that that ICE agents "forcibly relocated him from [HCCF] to [Etowah], restrained him in handcuffs and shackles and then did take him into their custody and confine and detain him in a Federal Correctional Facility." (Dkt. 1 ¶ 92). The Government argues that under the relevant state tort law, Nkansah is required to allege that his detention was unlawful or otherwise not privileged, that he can do this only if he alleges that his "removal order was defective or invalid based on his unlawful immigration status," and that he has failed to plead adequate facts to support this contention. (Dkt. 21, at 15).

The tort law of all the states concerned require that an individual be detained unlawfully

13

or without privilege for a false arrest or false imprisonment claim. Nkansah has not pled any facts challenging the lawfulness or unprivileged nature of his detention. Absent such facts, Nkansah cannot properly plead that his detention was unlawful or not privileged, as is required in the relevant states. The motion to dismiss the FTCA claims against the U.S. for false imprisonment or arrest is granted.

## **CONCLUSION**

The United States' partial motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to close the motion at Docket 21.

Dated: New York, New York
      March 24, 2020

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge