UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FELIX NKANSAH,

                         Plaintiff,

           - against -

UNITED STATES OF AMERICA,

                         Defendant.

18 Civ. 10230 (KMW) (SLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED STATES OF
AMERICA'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
*Counsel for the United States*
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2769
E-mail: carly.weinreb@usdoj.gov

CARLY WEINREB
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................1

PROCEDURAL HISTORY..........................................................................................................3

STANDARD OF REVIEW ...........................................................................................................6

ARGUMENT ............................................................................................................................7

    I.      The Government Should be Awarded Judgment on the Pleadings on
          Plaintiff's IIED Claim...............................................................................................7

         A.  The Complaint Fails to State a Claim for IIED .......................................................7

         B.  The IIED Claim Should be Dismissed as Duplicative of Assault and Battery......10

    II.     The Government Should be Awarded Judgment on the Pleadings on Plaintiff's
          Prima Facie Tort Claim...........................................................................................12

         A.  The Complaints Fails to State a Claim for Prima Facie Tort................................12

         B.  The Prima Facie Tort Claim Should Be Dismissed as Duplicative ......................15

CONCLUSION.........................................................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

**PAGE(S)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................. 7

Barone v. United States,
    No. 12-CV-4103 (LAK), 2016 WL 2658174 (S.D.N.Y. May 5, 2016) ............................ 13, 15

Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.,
    361 F. Supp. 2d 283 (S.D.N.Y. 2005) ................................................................... 13, 14

Beem v. Noble Grp. Ltd.,
    No. 14 CIV. 9046, 2015 WL 8781333 (S.D.N.Y. Dec. 14, 2015) ............................................ 15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................ 7, 9

Berrio v. City of New York,
    No. 15-CV-09570 (ALC), 2017 WL 118024 (S.D.N.Y. Jan. 10, 2017) .................................. 11

Campoverde v. Sony Pictures Ent.,
    No. 01 CIV. 7775(LAP), 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002) .............................. 12

Caravalho v. City of New York,
    No. 13CV4174PKCMHD, 2016 WL 1274575 (S.D.N.Y. Mar. 31, 2016) ........................ 11, 12

Chen v. United States,
    854 F.2d 622 (2d Cir. 1988) ............................................................................... 15, 16

Cohn-Frankel v. United Synagogue of Conservative Judaism,
    246 A.D.2d 332 (1st Dep't 1998) ........................................................................... 10

Conboy v. AT & T Corp.,
    241 F.3d 242 (2d Cir. 2001) ..................................................................................... 8

Cortina v. United States,
    No. 10 CIV. 5237 PAC GAY, 2011 WL 2748645 (S.D.N.Y. July 14, 2011) ........................ 14

Curiano v. Suozzi,
    63 N.Y.2d 113 (1984) ........................................................................................... 15

Davis v. Murphy,
    No. 12 CIV. 3297 (PGG), 2018 WL 10070524 (S.D.N.Y. Sept 24, 2018) ............................ 16

Dillon v. City of New York,
    704 N.Y.S.2d 1 (1st Dep't 1999) ...................................................................................... 8

Elmowitz v. Exec. Towers at Lido, LLC,
    571 F. Supp. 2d 370 (E.D.N.Y. 2008) ............................................................................... 9

Epifani v. Johnson,
    65 A.D.3d 224 (2d Dep't 2009) ................................................................................. 13, 14

Fischer v. Maloney,
    43 N.Y.2d 553 (1978) ................................................................................................. 8, 11

Freihofer v. Hearst Corp.,
    65 N.Y.2d 135 (1985) ......................................................................................... 13, 15, 16

Harrel v. County of Nassau,
    No. 10-CV-5894 MKB, 2013 WL 5439137 (E.D.N.Y. Sept. 27, 2013) .............................. 9

Hernandez v. United States,
    939 F.3d 191 (2d Cir. 2019)............................................................................................. 7

Howell v. New York Post Co., Inc.,
    81 N.Y.2d 115 (1993) ...................................................................................................... 8

J.H. v. City of Mount Vernon,
    No. 18-CV-4399 (CS), 2019 WL 1639944 (S.D.N.Y. Apr. 15, 2019)............................ 8, 9, 11

Karupaiyan v. CVS Health Corp.,
    No. 19 CIV. 8814 (KPF), 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021)..................... 8, 11, 12

Koulkina v. City of New York,
    559 F. Supp. 2d 300 (S.D.N.Y. 2008)............................................................................. 12

Lynch v. City of New York,
    952 F.3d 67 (2d Cir. 2020)............................................................................................... 6

Margrabe v. Sexter & Warmflash, P.C.,
    353 F. App'x 547 (2d Cir. 2009) .................................................................................... 10

Matthaus v. Hadjedj,
    148 A.D.3d 425 (1st Dep't 2017) ................................................................................... 15

Murphy v. Am. Home Prod. Corp.,

    58 N.Y.2d 293 (1983) ................................................................................................. 12

Patel v. Contemp. Classics of Beverly Hills,

    259 F.3d 123 (2d Cir. 2001)......................................................................................... 7

Rivera v. City of New York,

    392 F. Supp. 2d 644 (S.D.N.Y. 2005).......................................................................... 8

Salmon v. Blesser,

    802 F.3d 249 (2d Cir. 2015)................................................................................... 11, 12

Santos v. Barber,

    No. 17-CV-6475-CJS, 2017 WL 6409152 (W.D.N.Y. Dec. 15, 2017)................................. 16

Saunders v. Taylor,

    6 Misc. 3d 1015(A), 800 N.Y.S.2d 356 (Sup. Ct., N.Y. Cnty. 2003)......................... 10

Turley v. ISG Lackawanna, Inc.,

    774 F.3d 140 (2d Cir. 2014)......................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................6-7

Federal Rule of Civil Procedure 12(c) .............................................................. 1, 6

Federal Rule of Civil Procedure 15(c) ................................................................. 5

**Statutes**

28 U.S.C. § 2401(b) ........................................................................................... 14

28 U.S.C. § 2674 ................................................................................................ 15

Defendant United States of America (the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## PRELIMINARY STATEMENT

Plaintiff Felix Nkansah ("Plaintiff"), a citizen of Ghana, brings this action against the Government alleging that he was mistreated by U.S. Immigration Customs and Enforcement ("ICE") officers while he was in immigration detention.  He asserts claims for assault, battery, intentional infliction of emotional distress ("IIED"), and prima facie tort, all arising under the Federal Tort Claims Act ("FTCA").  However, the claims for IIED and prima facie tort are entirely duplicative of Plaintiff's assault and battery claims as well as other traditional tort theories, and therefore are not viable under New York law.  Furthermore, the complaint fails to plausibly allege critical elements of the IIED and prima facie tort claims.  For IIED, the complaint does not plausibly allege intent or "extreme and outrageous conduct," and for prima facie tort, the complaint fails to allege special damages with the requisite particularity and also fails to allege harm as a result of conduct "which would otherwise be lawful."  Accordingly, judgment on the pleadings should be awarded to the Government on the IIED and prima facie tort claims because they are duplicative and inadequately plead.

## BACKGROUND[1]

On December 17, 2014, ICE officers arrested Plaintiff, a noncitizen, in anticipation of his removal from the United States.  Compl. (ECF No. 1) ¶ 37.  After initial booking and processing, ICE detained Plaintiff at the Hudson County Correctional Facility ("HCCF") in Kearny, New

---

[1] For the purposes of this motion, the allegations in the Complaint are accepted as true.

Jersey, pending his removal proceedings in immigration court.[2]  Id.  Plaintiff was held at HCCF from December 17, 2014, through August 17, 2015.  Id. ¶¶ 37, 39.

On August 17, 2015, Plaintiff was transferred from HCCF to a different immigration detention facility in Alabama.  Id. ¶¶ 39, 45-46.  Plaintiff alleges that ICE transferred him in retaliation for grievances and complaints that Plaintiff had lodged while at HCCF, including complaints about inadequate heat, inadequate medical care, that he had not received funds sent to him by a non-governmental organization, and that his requests to make phone calls to his counsel were denied.  Id. ¶¶ 38-40.  A deportation officer allegedly threatened to transfer Plaintiff to a "far away location where his family would be unable to contact him" if he didn't stop complaining.  Id. ¶ 38.

On the morning of August 17, 2015, ICE took Plaintiff to its facility at 201 Varick Street in Manhattan ("Varick Street") for processing before going to the airport.  Id. ¶ 40.  Plaintiff alleges that at Varick Street he was placed in a cell by himself.  Id. ¶ 41.  Soon after, four to five ICE officers allegedly entered the cell and engaged in an unprovoked assault and battery of Plaintiff.  Id.  Plaintiff alleges that they pushed him down onto the floor, struck him, and that one officer pushed his knee into Plaintiff's back.  Id.  Plaintiff alleges that ICE officers placed shackles on his hands and feet so tightly that they began to bleed and lifted him up by a chain looped through those shackles causing severe pain and nerve damage.  Id. ¶ 43.

Plaintiff alleges that he lost consciousness at Varick Street and was taken to Newark International Airport where he was boarded onto an airplane.  Id. ¶ 45.  Plaintiff allegedly regained consciousness on the plane briefly and asked the officers to remove a hood that had

---

[2] At the time, HCCF housed immigration detainees pursuant to an intergovernmental contract with ICE.

been placed over his head which was causing him anxiety but this request was refused.  Id.

Plaintiff regained consciousness at an airport in Louisiana and was transported to an ICE detention facility located in Jena, Louisiana, where he was seen by medical staff.  Id. ¶¶ 46-47. Plaintiff was allegedly experiencing severe pain in his wrists and ankles and could not walk.  Id. ¶ 47.  The following day he was taken by bus to the Etowah County Detention Center ("ECDC") in Gadsden, Alabama, a local jail which housed immigration detainees pursuant to a contract with ICE.  Id. ¶¶ 46, 48.  Upon arrival at ECDC, Plaintiff was taken to the Riverview Regional Medical Center in Gadsden, Alabama, where he received treatment.  Id. ¶¶ 48-50.

Plaintiff remained at ECDC until March 2016.  Id. ¶ 51.  Plaintiff claims that while he was at ECDC he did not receive adequate treatment for his alleged nerve injuries, other physical complaints, and mental health conditions.  Id. ¶¶ 49-51.  He also alleges that he was housed in an inaccessible cell which prevented him from accessing visitors and the phone.  Id. ¶ 51.  In March 2016 he was released into the community pending further immigration court proceedings.  Id.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 9, 2018, asserting 16 claims against the Government and 36 John Doe defendants, who were identified as ICE agents, individually and in their official capacities.  See Compl. (ECF No. 1).  Twelve of Plaintiff's claims were brought under the FTCA against the Government for assault, battery, IIED, excessive force in violation of the Fourth and Eighth Amendments to the U.S. Constitution, negligent infliction of emotional distress ("NIED"), false arrest/imprisonment, prima facie tort, medical negligence, gross negligence in the hiring, training, and retention of employees, negligence, negligent guard violations, and negligent mishandling of bailment.  Id. ¶¶ 61-143.  Four claims were brought under the *Bivens* doctrine against some or all of the John Doe defendants for false imprisonment

in violation of the Fourth Amendment, failure to intervene in violation of the Fourth and Fifth

Amendments, cruel and unusual punishment in violation of the Fifth and Eighth Amendments,

and deliberate indifference for failure to provide medical care/negligent provision of medical

care in violation of the Fifth and Eighth Amendments.  Id. ¶¶ 144-85.

On August 23, 2019, the Government filed a partial motion to dismiss the complaint.  See

Mot. to Dismiss (ECF No. 21).  The Government argued that sovereign immunity barred

Plaintiff's FTCA claims alleging constitutional torts, as well as the claims arising from Plaintiff's

detention at ECDC under the independent contractor exception.  Id. at 6-10.  In addition, the

Government argued that all claims arising from Plaintiff's arrest on December 17, 2014, were

untimely because the arrest occurred more than two years before Plaintiff filed an administrative

tort claim.  Id. at 12.  Finally, the Government argued that Plaintiff failed to state a false

imprisonment claim because the complaint alleged no facts suggesting that his arrest was not

lawful.  Id. at 12-15.

On March 24, 2020, the Court issued an Opinion and Order granting in part and denying

in part the Government's motion.  See Op. & Order, dated Mar. 24, 2020 (ECF No. 36).  The

Court granted the Government's motion to dismiss the constitutional tort claims, the claims

arising from Plaintiff's arrest (specifically, Count 12 of the complaint alleging negligent

mishandling of bailment), and the FTCA claims for false imprisonment/arrest.  Id. at 7-8, 10-14.

The Court declined to dismiss the claims arising from Plaintiff's medical treatment at ECDC on

the basis that whether ECDC qualifies as an independent contractor is a fact-dependent issue.  Id.

at 8-10.

On May 10, 2021, Plaintiff filed a motion to amend the complaint to substitute the John

Doe defendants with their actual names.  See Mot. to Amend (ECF Nos. 64-66).[3]  The Government opposed, arguing that amendment would be futile because the statute of limitations for Bivens claims—the only claims asserted against the John Doe defendants—had expired.  See Opp. to Mot. to Amend (ECF No. 67).  Further, the Government argued that Plaintiff's Bivens claims did not relate back to the original complaint because the Bivens claims were already time barred when this action was commenced, and because Federal Rule of Civil Procedure 15(c) does not permit relation back when the failure to originally name the proper defendants was due to lack of knowledge of their identities rather than a mistake.  Id.

On August 30, 2021, Judge Cave filed a Report and Recommendation adopting the Government's arguments and denying Plaintiff's motion to amend as futile.  See Rep. and Rec. (ECF No. 74) ("R&R").  On November 23, 2021, over Plaintiff's objections, see Pl.'s Objections to R&R (ECF Nos. 75, 77), Judge Crotty entered an Order adopting the R&R in its entirety, denying Plaintiff's motion for leave to amend his complaint, and dismissing the Bivens claims against the John Doe defendants, see Order Adopting Rep. and Rec. (ECF No. 79).

On July 1, 2022, the parties further narrowed the claims at issue by filing a proposed stipulation and order dismissing with prejudice Plaintiff's claims for NIED, medical negligence, gross negligence in the hiring, training, and retention of employees, negligence, and negligent guard violations.  See Proposed Stipulation and Order (ECF No. 97).  Judge Crotty so-ordered the stipulation on July 13, 2022.  See Order (ECF No. 99).

Only four claims against the Government remain in this action, all under the FTCA: (1) assault; (2) battery; (3) IIED; and (4) prima facie tort.  The assault and battery claims arise from

---

[3] The motion to amend was originally filed on May 10, 2021, at docket number 58, however, the motion and its supporting documents were refiled on May 26, 2021, at docket numbers 64-66 to correct docket entry errors.

the alleged incident at Varick Street on August 17, 2015.  Compl. ¶¶ 61-64 (alleging that ICE officers "working at VDC [Varick Street Detention Service Processing Center]" engaged in an intentional, willful, and malicious assault on Plaintiff), 65-68 (alleging that ICE officers "working at VDC" engaged in a battery against Plaintiff when they "touched and pulled Plaintiff's hands and maliciously placed handcuffs on his wrists, chained and shackled him without his consent and with the intention of causing harmful and/or offensive bodily contact"). The IIED claim is premised on the Government's allegedly "extreme and outrageous conduct, namely the aforementioned intentional assault, battery, excessive force, placing a hood over his head during transport, placing the Plaintiff in fear of his life," as well as "failure to provide proper medical care, [and] deliberate indifference to the health and safety of Plaintiff" which were "all actions and conduct done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress to the Plaintiff."  Id. ¶ 70.  The prima facie tort claim also arises from the Government's alleged assault and battery of Plaintiff, "improper[]" and retaliatory transport of Plaintiff from Varick Street "with a bag over his head," and "fail[ure] to provide him with proper medical attention at the various detention centers he was transported to and housed . . . ."  Id. ¶ 99.

Plaintiff claims that as a result of this alleged conduct, he suffered physical harm and developed posttraumatic stress disorder ("PTSD").   Id. ¶ 54.  He seeks relief in the form of compensatory damages (emotional distress damages and lost wages), punitive damages, and declaratory relief.  Id. at 39.

## STANDARD OF REVIEW

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted) (cleaned up).  To survive a Rule 12(c) or

12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief

that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In both postures, the district court must accept

all allegations in the complaint as true and draw all inferences in the non-moving party's favor."

Patel v. Contemp. Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  However,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555));

Hernandez v. United States, 939 F.3d 191, 198 (2d Cir. 2019).  Ultimately, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level" and must assert

"more than labels and conclusions."  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678

(pleadings cannot survive by making "naked assertions devoid of further factual enhancement").

A court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal,

556 U.S. at 678 (citations omitted) (cleaned up).

## ARGUMENT

### I.    THE GOVERNMENT SHOULD BE AWARDED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S IIED CLAIM

The Court should award judgment on the pleadings to the Government with respect to the

IIED claim because the complaint fails to allege required elements and because the IIED claim is

duplicative of, and redressable by, other traditional tort remedies, including Plaintiff's claims for

assault and battery.

### A.  The Complaint Fails to State a Claim for IIED

IIED is a "highly disfavored [tort] under New York law" and "is to be invoked only as a

last resort."  Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (internal citations

and quotations marks omitted) (citing cases).  To state a claim for IIED, a plaintiff must allege:

"(i) extreme and outrageous conduct, (ii) with the intent to cause emotional distress, (iii) a causal connection between the conduct and the alleged injury, and (iv) that he has suffered severe emotional distress." Rivera v. City of New York, 392 F. Supp. 2d 644, 657-58 (S.D.N.Y. 2005) (citing Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993)). "New York strictly applies each of these elements." Id. "A plaintiff asserting IIED under New York law must allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]'" Karupaiyan v. CVS Health Corp., No. 19 CIV. 8814 (KPF), 2021 WL 4341132, at *32 (S.D.N.Y. Sept. 23, 2021) (quoting Dillon v. City of New York, 704 N.Y.S.2d 1, 7 (1st Dep't 1999)); accord Fischer v. Maloney, 43 N.Y.2d 553, 557 (1978). "Accordingly, the pleading standard is 'rigorous, and difficult to satisfy.'" J.H. v. City of Mount Vernon, No. 18-CV-4399 (CS), 2019 WL 1639944, at *5 (S.D.N.Y. Apr. 15, 2019) (quoting Howell, 81 N.Y.2d at 121); accord Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001).

The complaint fails to satisfy this rigorous standard. Specifically, it fails to adequately allege the second element of an IIED claim—that Government officers intended to cause Plaintiff emotional distress. See Rivera, 392 F. Supp. 2d at 657-58. Plaintiff does not plead a single fact supporting his conclusory assertion that ICE officers intended to inflict emotional harm on him. See Compl. ¶¶ 37-60. While Plaintiff alleges that "[p]lacing a hood over his head, was likely to and did induce extreme fear," see id. ¶ 45, this does not plausibly allege that ICE officers placed a spit hood on his head with the intent to cause emotional distress. Plaintiff also alleges that ICE officers shackled and lifted him "in a manner calculated to injure his hands and feet," but Plaintiff does not allege that by doing so the officers intended to inflict emotional distress. See id. ¶ 43. And while Plaintiff asserts in a conclusory fashion that the Government

8

"engaged in extreme and outrageous conduct, namely the aforementioned intentional assault, battery, excessive force, placing a hood over his head during transport, placing the Plaintiff in fear of his life, failure to provide proper medical care, deliberate indifference to the health and safety of Plaintiff . . . with the intent to cause . . . severe emotional distress to the Plaintiff," id. ¶ 70, these are legal conclusions not entitled to the presumption of truth, see Twombly, 550 U.S. at 555 (a complaint must assert "more than labels and conclusions" to survive a motion to dismiss). Because the complaint does not contain specific factual allegations suggesting intent, it fails to plausibly allege an IIED claim under New York's "rigorous" pleading standard. See J.H., 2019 WL 1639944, at *5 (dismissing IIED claim because allegation that officer "engaged in . . . extreme and outrageous [conduct]" was "conclusory"); Elmowitz v. Exec. Towers at Lido, LLC, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008) (pleadings that "do[] nothing more than recite the . . . elements of a IIED claim . . . are insufficient to state a plausible cause of action for IIED").

In addition, a claim of IIED premised on an alleged "single act of force . . . even if determined to be unreasonable, does not reach the high threshold of 'extreme and outrageous conduct' required under New York law." See J.H., 2019 WL 1639944, at *5 (cleaned up). As noted in Harrel v. County of Nassau, "[a] single act of force employed while trying to transport a patient to the hospital . . ., even if determined to be unreasonable, does not reach the high threshold of 'extreme and outrageous conduct' required under New York law." No. 10-CV-5894 MKB, 2013 WL 5439137, at *13 (E.D.N.Y. Sept. 27, 2013). Here too, Plaintiff's IIED claim arises from a single alleged act of force during his transport from HCCF to ECDC. Compl. ¶¶ 41-45, 70-71. This is not sufficient to state a claim for IIED. See J.H., 2019 WL 1639944, at *5; Harrel, 2013 WL 5439137, at *13; Elmowitz, 571 F. Supp. 2d at 379 (E.D.N.Y. 2008) (allegations that defendant "hit [plaintiff] multiple times with her office telephone" failed to state

a claim for IIED because the altercation was a "one time occurrence" without allegations suggesting "a pattern of physical abuse that placed Plaintiff in fear of imminent harm"); Saunders v. Taylor, 6 Misc. 3d 1015(A), 800 N.Y.S.2d 356 (Sup. Ct., N.Y. Cnty. 2003) (allegation that defendant punched plaintiff in the face once did not state a claim for IIED).

Nor do Plaintiff's sweeping and conclusory allegations that he received inadequate medical care from providers at HCCF, Varick Street, the Jena, Louisiana, ICE detention facility, ECDC, and Riverview Regional Medical Center plausibly allege a "deliberate and malicious campaign" against him absent allegations of coordination or common intent.  See Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 550 (2d Cir. 2009) (quoting Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 332 (1st Dep't 1998) ("Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment and intimidation.").  While Plaintiff alleges dissatisfaction with numerous medical providers (both private and governmental) in various locations across the country over the course of a year and a half, he does not plead any facts suggesting that this course of care was coordinated or part of a campaign against him.  This does not plausibly allege "extreme and outrageous conduct" by the Government as required to state a claim for IIED.

Because the complaint does not plausibly allege intent or "extreme and outrageous conduct," Plaintiff has failed to state a claim for IIED and judgment on the pleadings should be awarded to the Government.

### B.  The IIED Claim Should Be Dismissed as Duplicative of Assault and Battery

The IIED claim must also be dismissed because it is duplicative of Plaintiff's other claims.  Where "the conduct for the underlying claim may be redressed by way of traditional tort

remedies such as battery, an IIED claim is duplicative and must be dismissed on that basis." Karupaiyan, 2021 WL 4341132, at *32 (quoting J.H., 2019 WL 1639944 at *5). "New York does not recognize . . . IIED causes of action where the conduct underlying them may be addressed through traditional tort remedies." J.H., 2019 WL 1639944 at *5 (quoting Berrio v. City of New York, No. 15-CV-09570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017)).

Indeed, the New York Court of Appeals has "questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability." Fischer, 43 N.Y.2d at 557-58. "All four Appellate Division courts have answered the question and held that it cannot. Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015) (citing cases); see also Caravalho v. City of New York, No. 13CV4174PKCMHD, 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) ("[S]tate courts and federal district courts in this Circuit have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.") (internal quotation marks omitted).

Consistent with this precedent, Plaintiff's IIED claim should be dismissed as duplicative because the alleged conduct underlying the claim falls within the ambit of traditional tort liability. In fact, the complaint expressly alleges that Plaintiff suffered emotional distress due to "the aforementioned assault, battery, [and] excessive force" claims and as a result of the Government's alleged "failure to provide proper medical care, [and] deliberate indifference to the health and safety of Plaintiff," Compl. ¶ 70. Thus, all of the alleged conduct underlying the IIED claim can be redressed through assault, battery, and medical malpractice claims.

The fact that Plaintiff voluntarily dismissed his medical negligence claim does not change the analysis. See Order (ECF No. 99). The inquiry is whether the asserted IIED claim falls

within the ambit of a traditional tort remedy, not whether such a tort remedy is practically available.  Consistent with this principle, the Second Circuit upheld the district court's dismissal of an IIED claim in <u>Salmon v. Blesser</u> because defendant's "alleged conduct would have been actionable under state law as a battery," even though the plaintiff had not brought a battery claim.  802 F.3d at 256-57.  IIED cannot be used to "evade" or "circumvent" the proper cause of action.  <u>See</u> <u>Murphy v. Am. Home Prod. Corp.</u>, 58 N.Y.2d 293, 303-04 (1983).

Accordingly, because Plaintiff's IIED claim is duplicative of and subsumed by the torts of assault, battery, and medical malpractice, it should be dismissed.  <u>See, e.g.</u>, <u>Caravalho</u>, 2016 WL 1274575, at *23 (dismissing IIED claim as duplicative because "the conduct at issue—[an officer's] allegedly unreasonable use of force—and any resulting emotional damage is entirely subsumed by [plaintiff's] common law assault and battery claim."); <u>Campoverde v. Sony Pictures Ent.</u>, No. 01 CIV. 7775(LAP), 2002 WL 31163804, at *12-13 (S.D.N.Y. Sept. 30, 2002) (holding that plaintiffs' IIED claim "must be dismissed" because the underlying conduct "may be remedied through their assault and battery . . . claims"); <u>Karupaiyan</u>, 2021 WL 4341132, at *32 (dismissing IIED claim as duplicative of battery claim); <u>Koulkina v. City of New York</u>, 559 F. Supp. 2d 300, 328 (S.D.N.Y. 2008) (dismissing IIED claim because "the medical malpractice and the IIED claims . . . arise from the same allegations").

## II.    THE GOVERNMENT SHOULD BE AWARDED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S PRIMA FACIE TORT CLAIM

The Court should also award judgment on the pleadings to the Government with respect to the prima facie tort claim because it is inadequately plead and because prima facie tort is duplicative of assault and battery and other traditional tort theories.

### A.  <u>The Complaint Fails to State a Claim for Prima Facie Tort</u>

"Prima facie tort affords a remedy for the infliction of intentional harm, resulting in

damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142 (1985) (internal quotation marks omitted). "The requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." Id. at 142-43. "A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." Id. at 143.

Under New York law, "special damages" are damages that are "alleged with sufficient particularity to identify actual losses . . . [that are] related causally to the alleged tortious acts." Barone v. United States, No. 12-CV-4103 (LAK), 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016), aff'd, 722 F. App'x 57 (2d Cir. 2018) (quoting Epifani v. Johnson, 65 A.D.3d 224, 233 (2d Dep't 2009)). Special damages must be "fully and accurately stated" and cannot be "conjectural in identity and speculative in amount." Barone, 2016 WL 2658174, at *4 (internal citations omitted). "[R]ound sums without any attempt at itemization are insufficient." Id. (quoting Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc., 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005)).

While the complaint generally asserts that Plaintiff has incurred "special damages," it does not specify what those special damages are or itemize or calculate the alleged losses. See Compl. The prayer for relief does not contain a demand for special damages at all, see id. at 39, and the demand for compensatory damages does not attempt to specify or quantify the amount, merely requesting "an amount not lower than previously claimed in the administrative agency actions," id. This is even less specific than allegations in other cases that courts rejected as inadequate under the special damages pleading standard. See, e.g., Barone, 2016 WL 2658174, at *4 (plaintiff's round number estimates of damages for legal fees, lost income, actual losses,

and medical expenses failed to sufficiently allege special damages); Bear, Stearns Funding, Inc.,
361 F. Supp. 2d at 306 (complaint that requested damages "in an amount to be determined at
trial, but no less than $1,500,000" was "insufficient to state a cause of action for prima facie tort
insofar as it fails to plead special damages"); Cortina v. United States, No. 10 CIV. 5237 PAC
GAY, 2011 WL 2748645, at *2-3 (S.D.N.Y. July 14, 2011) (plaintiff failed to plead special
damages with the requisite particularity where "[t]he only reference to damages in the Amended
Complaint appears in plaintiff's prayer for relief, wherein he demands judgment . . . in [the] sum
of $1,000,000,000, together with any other relief the court finds to be just and proper"); Epifani,
65 A.D.3d at 233 (complaint that demanded damages "in an amount to be prove[d] at time of
trial, but in excess of the jurisdictional minimum of this Court" failed to plead special damages
with the required specificity).

Plaintiff's conclusory and unquantified allegations that he sustained "lost earnings" and
incurred "medical expenses" are similarly deficient. See id.; Compl. ¶¶ 63, 67, 108. And while
Plaintiff alleges that "over $10,000 in cash" went missing from his home on December 17, 2014,
the day of his arrest, see Compl. ¶ 37, these alleged events occurred more than two years before
Plaintiff submitted his FTCA administrative tort claim and are therefore time-barred, see Op. &
Order, dated Mar. 24, 2020 (ECF No. 36) at 10-11 (citing 28 U.S.C. § 2401(b)) (dismissing as
untimely the FTCA negligent mishandling of bailment claim, which arose from "the alleged loss
of Nkansah's property in the course of his December 17, 2014 arrest"). Of course, even if
Plaintiff's allegations of lost cash could be properly considered, a round number estimate of
"over $10,000" does not satisfy the special damages pleading standard. See supra at 13.

In addition, to state a claim for prima facie tort, a plaintiff must plausibly allege that the
challenged act or series of acts would have otherwise been lawful absent the intent to inflict

harm.  <u>Freihofer</u>, 65 N.Y.2d at 142.  In contrast, here, Plaintiff asserts that the conduct underlying

the prima facie tort claim was "illegal and not [to] be expected or to be tolerated in a civilized

society."  Compl. ¶ 99.  The complaint expressly predicates the prima facie claim on allegedly

tortious conduct, including "retaliation," "assault[]," "batter[y]," "fail[ure] to provide [Plaintiff]

with proper medical attention," and breaches of the Government's "duty of care."  <u>Id.</u>  But

tortious, unlawful, or "illegal" conduct fails to state a prima facie tort claim as a matter of law.

<u>See</u> <u>Barone</u>, 2016 WL 2658174, at *4-5 (dismissing prima facie tort claim because, *inter alia*, the

requested damages were not tied to "conduct that otherwise would be lawful").

 Having failed to allege special damages with the requisite particularly or underlying

conduct that would otherwise be lawful, the complaint fails to state a claim for prima facie tort.[4]

### B.  <u>The Prima Facie Tort Claim Should Be Dismissed as Duplicative</u>

As with IIED, "a set of facts giving rise to a common-law tort is fatal to a prima facie tort

claim . . . for 'once a traditional tort is established the cause of action for prima facie tort

disappears.'"  <u>Chen v. United States</u>, 854 F.2d 622, 628 (2d Cir. 1988) (quoting <u>Curiano v.

Suozzi</u>, 63 N.Y.2d 113, 117 (1984)); <u>accord</u> <u>Matthaus v. Hadjedj</u>, 148 A.D.3d 425, 426 (1st

Dep't 2017).

As discussed above, the prima facie tort claim expressly references Plaintiff's other

traditional tort claims including, *inter alia,* assault, battery, medical malpractice, and negligence,

---

[4] The complaint's demand for up to $2.5 million in compensatory damages for alleged violations
of Plaintiff's constitutional rights should not be considered because the Court has dismissed all
of Plaintiff's constitutional claims.  <u>See</u> Op. & Order, dated Mar. 24, 2020 (ECF No. 36); Order
Adopting Rep. and Rec. (ECF No. 79).  Plaintiff's demand for $2.5 million in punitive damages
should also be disregarded because "punitive damages do not qualify as 'special damages' . . .
under New York law."  <u>See</u> <u>Beem v. Noble Grp. Ltd.</u>, No. 14 CIV. 9046, 2015 WL 8781333, at
*5 n.5 (S.D.N.Y. Dec. 14, 2015).  In any case, the Government is not liable for punitive damages
under the FTCA.  28 U.S.C. § 2674.

see Compl. ¶ 99; see also supra at 14-15, and relies on the same alleged set of facts: the

intentional infliction of physical and emotional harm by assaulting, battering, and shackling

Plaintiff and placing a hood over his head, compare Compl. ¶¶ 98-102 (prima facie tort) with id.

¶¶ 61-64 (assault), 65-68 (battery), 69-74 (IIED), 75-80 (excessive force)[5], 81-89 (NIED), 103-

110 (medical negligence), 118-126 (negligence), 127-134 (negligent guard violations);

retaliatory transfer and use of force against Plaintiff for lodging complaints, compare id. ¶¶ 98-

102 (prima facie tort) with id. ¶¶ 61-64 (assault), 65-68 (battery), 75-80 (excessive force); failure

to provide Plaintiff with proper medical care, compare id. ¶¶ 98-102 (prima facie tort) with id. ¶¶

61-64 (assault), 65-68 (battery), 69-74 (IIED), 75-80 (excessive force), 81-89 (NIED), 103-110

(medical negligence), 118-126 (negligence), 127-134 (negligent guard violations); and breaches

of the Government's duty of care, compare id. ¶¶ 98-102 (prima facie tort) with id. ¶¶ 81-89

(NIED), 103-110 (medical negligence), 118-126 (negligence), 127-134 (negligent guard

violations). Thus, the prima facie tort claim is entirely duplicative of Plaintiff's other traditional

tort claims and should be dismissed.[6] See Chen, 854 F.2d at 628-29 (affirming dismissal of

prima facie tort claim as duplicative of "at least three traditional common-law torts"); Santos v.

Barber, No. 17-CV-6475-CJS, 2017 WL 6409152, at *7 (W.D.N.Y. Dec. 15, 2017) (dismissing

---

[5] Although this claim is styled as arising under the FTCA, the complaint makes clear that it is a constitutional tort claim alleging violations of Plaintiff's rights under the Fourth, Fifth, and Eighth Amendments to the U.S. Constitution, which the Court previously dismissed. See Op. & Order, dated Mar. 24, 2020 (ECF No. 36) at 7-8 (dismissing fourth claim for relief). Nevertheless, since "New York courts analyze assault and battery claims against police officers using the same standard applicable to excessive force claims," Plaintiff may rely on these allegations for his remaining FTCA claims for assault and battery. Davis v. Murphy, No. 12 CIV. 3297 (PGG), 2018 WL 10070524, at *11 (S.D.N.Y. Sept. 24, 2018).

[6] The Court's prior dismissal of the excessive force, NIED, medical negligence, negligence, and negligent guard violations claims does not render the prima facie tort claim nonduplicative because "prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort." Freihofer, 65 N.Y.2d at 143; see also supra at 11-12 (same, for IIED).

prima facie tort claim as "duplicative of the assault and battery claims").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should award judgment on the pleadings to the

Government with respect to the IIED and prima facie tort claims.

Dated: July 22, 2024
New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    /s/ Carly Weinreb
CARLY WEINREB
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2769
E-mail: carly.weinreb@usdoj.gov