UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIX NKANSAH,

*Plaintiff*

—v.—

UNITED STATES OF AMERICA,

*Defendant*

Docket No.
1:18-cv-10230(KMW)(SLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF CROSS-MOTION TO AMEND THE COMPLAINT

Rehan Nazrali, Esq.
*Attorney for Plaintiff*
299 Broadway, 17th Floor
New York, NY10007
Tel: (646) 331-9378
Email: rnazraliesq@gmail.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………1

BACKGROUND………………………………………………………………………… 1

PROCEDURAL HISTORY……………………………………………………………… 3

STANDARDS OF REVIEW……………………………………………………………6

    1. MOTION TO AMEND THE COMPLAINT…………………………………………6

    2. FED R. CIV. P. 12(C) JUDGMENT ON THE PLEADINGS……………………7

ARGUMENT……………………………………………………………………… 7

    1. THE PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT 7

        A. There is No Undue Delay……………………………………………………7

        B. There is No Bad Faith on Plaintiff's Behalf………………………………8

        C. There is No Futility of Amendment………………………………………… 9

        D. There is No Undue Prejudice to the Government…………………………… 10

        E. The PAC Renders The Government's Motion Moot………………………11

    2. THE GOVERNMENT SHOULD BE DENIED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S IIED CLAIM……………………………………………… 11

        A. Precedent Provides This Court The Authority To Assess The Government's Motion Through The Allegations In The PAC……………………………………… 12

        B. The PAC States A Claim That Sufficiently Pleads All Elements Of IIED………… 12

        C. The IIED Claim Is Not Predicated On A Single Act……………………… 14

        D. The IIED Claim Is Not Duplicative of Other Torts Claims………………… 15

    3. THE GOVERNMENT SHOULD BE DENIED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S PRIMA FACIE TORT CLAIM……………………………… 16

        A. The Complaint States a Claim for Prima Facie Tort…………………………16

        B. The Prima Facie Tort Claim Is Not Duplicative of Other Torts Claims……………18

        C. The Prima Facie Tort Claim Is Properly Pled And Should Not Be Dismissed……. 19

CONCLUSION……………………………………………………………………… 19

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

Agerbrink v. Model Serv. LLC, 155 F.Supp. 3d 448 (S.D.N.Y. 2016)...................... 9, 10

Ashcroft v. Iqbal, 556 U.S. 662 (2009).................................................................. 7

A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F.Supp. 2d 281, 299
(S.D.N.Y. 2000)........................................................................................ 10

Barone v. United States, No. 12-CV-4103 (LAK), 2016 WL 2658174 (S.D.N.Y. May 5,
2016)........................................................................................... 17, 18, 19

Bear, Stears Funding Inc. v. Interface Grp.-Nevada, Inc., 361 F. Supp. 2d 283, 306
(S.D.N.Y. 2005)........................................................................................ 15

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007).................................................................................................. 7

Belsky v. Lowenthal,62 A.D.2d 319, 323, 405 N.Y.S.2d 62, 65
(App. Div. 1st Dept. 1978)............................................................................ 19

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1933)................................. 10

Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2004 U.S. Dist. LEXIS 989 (S.D.N.Y. Jan.
27, 2004)........................................................................................... 8, 10

Chen v. United States, 854 F.2d 622 (2d Cir. 1988)................................................. 18

Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 332 (1st Dep't
1998)................................................................................................ 14

Conforti v. Sunbelt Rentals, Inc., 201 F. Supp. 3d 378, 291 (E.D.N.Y. 2016)............. 6, 12

Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)); accord Matthaus v. Hadjedj, 148 A.D.3d
425, 426 (1st Dep't 2017)............................................................................ 18

Davis v. Sedgwick Claims Mgmt. Servs. Inc., 2023 U.S. Dist. LEXIS 154760 (S.D.N.Y.
Aug. 30, 2023)......................................................................................... 8

Domingues v. Walsh, 2023 U.S. Dist. LEXIS 169635  (S.D.N.Y. Sept. 22, 2023)............. 8

Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 98 (S.D.N.Y. 2010).................... 8

Epifani v. Johnson, 65 A.D. 3d 224, 233 (2d Dep't 2009)........................................ 17

Freihofer v. Hearst Corp., 65 N.Y.2d 135 (1985)............................................... 16, 17

Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp. 2d 265, 273-74
(N.D.N.Y. 2012)........................................................................................ 12

James v. Monroe Cty., No. 20-CV-7094 CJS, 2022 U.S. Dist. LEXIS 211669, at *23 (W.D.N.Y. Nov. 22, 2022)............................................................................11, 12

J.H. v. City of Mount Vernon, No. 18-CV-4399 (CS, 2019 WL 1639944 (S.D.N.Y. Apr. 15, 2019).................................................................................................. 13

Johnson-Tucker v. Loyola Sch., No. 23-CV-1351 (JGLC), 2024 U.S. Dist. LEXIS 13473, at *4 (S.D.N.Y. Jan. 25, 2024).................................................................. 11

Jones v. City of New York, No. 18 Civ. 1937 (VSB) (GWG), 571 F. Supp. 3d 118, 2021 U.S. Dist. LEXIS 227950, 2021 WL 5562694, at *5 (S.D.N.Y. Nov. 29, 2021)................6

Karupaiyan v. CVS Health Corp., No. 19 CIV. 8814 (KPF), 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021)................................................................................... 12

Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 550 (2d Cir. 2009)................14

McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 335 (E.D.N.Y. 2002).......... 15

Morris v. City of New York, 2022 U.S. Dist. LEXIS 129953 (S.D.N.Y. July 21, 2022)... 5, 9

Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)................................................................................................ 10

Perez v. Escobar Constr., Inc., 342 F.R.D. 378 (S.D.N.Y. 2022)........................... 6, 7, 9

Powermat Techs. V. Belkin Int'l, 2020 U.S. Dist. LEXIS 98912 (S.D.N.Y. April 2, 2020)... 6

Randolph Foundation v. Duncan, No. 00 Civ. 1172, 2002 U.S. Dist. LEXIS 362, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002)................................................................. 9

Regency Nyc, Inc. v. Atkinson, 2023 U.S. Dist. LEXIS 203125 (S.D.N.Y. Nov. 13, 2023).. 6

Rivera v. City of New York, 392 F. Supp. 2d 644 (S.D.N.Y. 2005)........................ 12, 13

Roelcke v. Zip Aviation, LLC, 571 F. Supp. 3d 214 (S.D.N.Y. Nov. 23, 2021).............. 15

Rother v. N.Y. State Dep't of Corrections and Cmty. Supervision, 970 F.Supp. 2d 78, 106 (N.D.N.Y. 2013)............................................................................................. 18

State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).......................7

Toliver v. City of New York, 2013 U.S. Dist. LEXIS 39894 (S.D.N.Y. March 21, 2013).....7

Turley v. ISG Lackawanna Inc., 774 F.3d 140, 157 (2d Cir. 2014)............................. 15

United States ex. Rel. Raffington v. Bon Secours Health Sys., Inc., 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021)......................................................................................... 6, 9

Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 266, 771 N.Y.S.2d 20, 22-23 (1st Dep't 2002)........................................................................................... 18, 19

Wash. v. Dewey, No. 17-CV-1316, 2019 U.S. Dist. LEXIS 72871, 2019 WL 1921939, at *2 (D. Conn. Apr. 30, 2019)..................................................................................... 8

**Statutes**

Federal Rule of Civil Procedure 15(a)(2)............................................................... 1

Plaintiff Felix Nkansah ("Plaintiff"), by his attorney, Rehan Nazrali, Esq., respectfully submits this memorandum of law i) in support of his cross-motion to amend the complaint (See ECF No. 1) pursuant to Federal Rule of Civil Procedure 15(a)(2) and ii) in opposition to Defendant United States of America's ("the Government") motion for partial judgment on the pleadings.

## PRELIMINARY STATEMENT

Plaintiff filed this lawsuit against the Government due to mistreatment by U.S. Immigration Customs and Enforcement ("ICE") officers while he was in immigration detention. Plaintiff asserts claims for assault, battery, intentional infliction of emotional distress ("IIED"), and prima facie tort, all arising under the Federal Torts Claims Act ("FTCA"). Now, Plaintiff respectfully submits this cross-motion for leave to amend his complaint (ECF No. 1), specifically proposing amendments to his IIED and prima facie tort claims. For the reasons stated below, the Plaintiff's request should be granted, thus rendering the Government's motion moot.

Additionally, in direct opposition to the Government's motion, the Plaintiff asserts that the proposed amended complaint ("PAC") plausibly alleges critical elements of the IIED and prima facie tort claims and accordingly, the Government's motion for judgment on the pleadings should be denied. The PAC's amendments are contained in paragraphs 70–75, 102, 103, and 105.

## BACKGROUND[1]

On December 17, 2014, ICE officers arrested Plaintiff, a resident-alien, in anticipation of his removal from the United States. See Compl. ¶37. After initial booking and processing,

---

[1] For the purposes of this motion, the allegations in the Complaint are accepted as true.

ICE detained Plaintiff at the Hudson County Correctional Facility ("HCCF") in Kearny, New Jersey, pending his removal proceedings in immigration court. Id. at ¶¶37, 39. Plaintiff was held at HCCF from December 17, 2014 through August 17, 2015. Id.

On August 10, 2015, while Plaintiff was at HCCF, Plaintiff filed a grievance with ICE Enforcement and Removal Operations because a Deportation Officer denied him phone calls to legal counsel. Id. at ¶38. In return, that Deportation Officer threatened to transfer Plaintiff from HCCF to a far away location where his family would be unable to contact him. Id. After, on August 12, 2015, Plaintiff reported that threat to other ICE officers and made a call to the ICE 'HotLine.' Id.

Within five-days of reporting the threat, on August 17, 2015, unidentified ICE Officers took Plaintiff from HCCF to 201 Varick Street in Manhattan ("Varick") in order to process his transfer to a different immigration facility in Alabama. Id. at ¶¶39, 45-46. Plaintiff's transfer to Alabama was in retaliation for grievances and complaints Plaintiff had lodged while at HCCF, including complaints about inadequate heat, inadequate medical care, that he had not received funds sent to him by a non-governmental organization, that his requests to make phone calls to his counsel were denied, and regarding the Deportation Officer's threat. Id. ¶¶ 38-40.

On the morning of August 17, 2015, at Varick, ICE placed Plaintiff in a cell by himself. Id. ¶41. Soon after, ICE officers entered the cell and engaged in an unprovoked assault and battery of Plaintiff. Id. ICE officers pushed Plaintiff down onto the floor, struck him, and one officer pushed his knee into Plaintiff's back. Id. Afterwards, ICE officers placed shackles on his hands and feet so tightly that they began to bleed, and lifted Plaintiff up by a chain looped through those shackles causing severe pain and nerve damage. Id. ¶43. In result,

Plaintiff lost consciousness at Varick and was taken to Newark International Airport where he was boarded onto an airplane. Id. ¶45. On that flight, Plaintiff regained consciousness and asked the officers to remove a hood that had been placed over his head, which was causing him anxiety, but his request was refused. Id.

Plaintiff regained consciousness at an airport in Louisiana and was transported to an ICE detention facility located in Jena, Louisiana, where he was seen by medical staff. Id. at ¶¶ 46-47. Plaintiff was experiencing severe pain in his wrists and ankles and could not walk. Id. at ¶47. The following day he was taken by bus to the Etowah County Detention Center ("ECDC") in Gadsden, Alabama, a local jail which housed immigration detainees pursuant to a contract with ICE. Id. at ¶¶46, 48. Upon arrival at ECDC, Plaintiff was taken to the Riverview Regional Medical Center in Gadsden, Alabama. Id. ¶48-50.

Plaintiff remained at ECDC until March 2016. Id. at ¶51. At ECDC, Plaintiff did not receive adequate treatment for his nerve injuries, other physical complaints, and mental health conditions. Id. at ¶¶49-51. Plaintiff was also housed in an inaccessible cell which prevented him from accessing visitors and the phone. Id. at ¶51. In March 2016, he was released into the community pending further immigration court proceedings. Id.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 9, 2018, asserting 16 claims against the Government and 36 John Doe defendants, who were identified as ICE agents, individually and in their official capacities. See ECF No. 1. Twelve of Plaintiff's claims were brought under the FTCA against the Government for assault, battery, IIED, excessive force in violation of the Fourth and Eighth Amendments to the U.S. Constitution, negligent infliction of emotional distress ("NIED"), false arrest/imprisonment, prima facie tort, medical negligence, gross

negligence in the hiring, training, and retention of employees, negligence, negligent guard violations, and negligent mishandling of bailment. Id. ¶¶61-143. Four claims were brought under the Bivens doctrine against some or all of the John Doe defendants for false imprisonment in violation of the Fourth Amendment, failure to intervene in violation of the Fourth Amendment and Fifth Amendments, cruel and unusual punishment in violation of the Fifth and Eighth Amendments, and deliberate indifference for the failure to provide medical care/negligent provision of medical care in violation of the Fifth and Eighth Amendments. Id. ¶¶144-85.

On August 23, 2019, the Government filed a partial motion to dismiss the complaint. See ECF No. 21. The Government argued that sovereign immunity barred Plaintiff's FTCA claims alleging constitutional torts, as well as the claims arising from Plaintiff's detention at ECDC under the independent contractor exception. Id. at 6-10. In addition, the Government argued that all claims arising from Plaintiff's arrest on December 17, 2014, were untimely because the arrest occurred more than two years before Plaintiff filed an administrative tort claim. Id. at 12. Finally, the Government argued that Plaintiff failed to state a false imprisonment claim because the complaint alleged no facts suggesting that his arrest was not lawful. Id. at 12-15.

On March 20, 2020, the Court issued an Opinion and Order granting in part and denying in part the Government's motion. See ECF No. 36. The Court granted the Government's motion to dismiss the constitutional tort claims, the claims arising from Plaintiff's arrest (specifically, Count 12 of the complaint alleging negligent mishandling of bailment), and the FTCA claims for false imprisonment/arrest. Id. at 7-8, 10-14. The Court declined to dismiss the claims arising from Plaintiff's medical treatment at ECDC on the basis

4

that whether ECDC qualifies as an independent contractor is a fact-dependent issue. Id. at 8-10.

On May 10, 2021, Plaintiff filed a motion to amend the complaint to substitute the John Doe defendants with their actual names. See ECF Nos. 64-66. The Government opposed, arguing that amendment would be futile because the statute of limitations for Bivens claims--the only claims asserted against the John Doe defendants--had expired. See ECF No. 67. Further, the Government argued that Plaintiff's Bivens claims did not relate back to the original complaint (ECF No. 1) because the Bivens claims were already time barred when this action commenced, and because Fed. R. Civ. P. 15(c) does not permit relation back when the failure to originally name the proper defendants was due to lack of knowledge of their identities rather than a mistake. Id.

On August 30, 2021, Judge Cave filed a Report and Recommendation ("R&R") adopting the Government's arguments and denying Plaintiff's motion to amend as futile. See ECF No. 74. On November 23, 2021, over Plaintiff's objections, see ECF Nos. 75, 77, Judge Crotty entered an Order adopting the R&R in its entirety, denying Plaintiff's motion for leave to amend his complaint, and dismissing the Bivens claims against the John Doe defendants, see ECF No. 79.

On July 1, 2022, the parties further narrowed the claims at issue by filing a proposed stipulation and order dismissing, with prejudice, Plaintiff's claims for NIED, medical negligence, gross negligence in the hiring, training, and retention of employees, negligence, and negligent guard violations. See ECF No. 97. Judge Crotty so-ordered that stipulation on July 13, 2022. See ECF No. 99. Plaintiff asserts that he suffered physical harm and developed posttraumatic stress disorder ("PTSD"). Compl. ¶54. Plaintiff seeks relief in the form of

compensatory damages (emotional distress damages and lost wages), punitive damages, and declaratory relief. Id. at 39.

## STANDARDS OF REVIEW

### 1.    MOTION TO AMEND THE COMPLAINT

"The permissive standard of Rule 15 is consistent with our strong preference for resolving disputes on the merits." Regency Nyc, Inc. v. Atkinson, 2023 U.S. Dist. LEXIS 203125, at *3 (S.D.N.Y. Nov. 13, 2023) (internal quotation marks omitted) (citing Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005))). Therefore, a party may amend its pleading with the court's leave when justice so requires. See Fed. R. Civ. P. 15(a)(2). To determine whether "justice so requires", the court considers four factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) undue prejudice to the opposing party. Morris v. City of New York, 2022 U.S. Dist. LEXIS 129953, at *2 (S.D.N.Y. July 21, 2022) (citing Jones v. City of New York, No. 18 Civ. 1937 (VSB) (GWG), 571 F. Supp. 3d 118, 2021 U.S. Dist. LEXIS 227950, 2021 WL 5562694, at *5 (S.D.N.Y. Nov. 29, 2021)). The "'non-movant bears the burden of showing prejudice, bad faith[,] and futility of amendment.'" Perez v. Escobar Constr., Inc., 342 F.R.D. 378, 380 (S.D.N.Y. 2022) (quoting United States ex. Rel. Raffington v. Bon Secours Health Sys., Inc., 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021)) (cleaned up).

Furthermore, when a motion for leave to amend a pleading is filed as a Rule 12 motion is pending, the court may "accept the pleading and 'deny the motion as moot'" or "'consider the merits of the motion in light of the amended [pleading].'" Powermat Techs. V. Belkin Int'l, 2020 U.S. Dist. LEXIS 98912, at *17-18 (S.D.N.Y. April 2, 2020) (quoting Conforti v.

<u>Sunbelt Rentals, Inc.</u>, 201 F. Supp. 3d 378, 291 (E.D.N.Y. 2016) (internal quotation marks omitted)).

## 2.    <u>FED R. CIV. P. 12(C) JUDGMENT ON THE PLEADINGS</u>

The standard for judgment on the pleadings under Rule 12(c) is the same as Rule 12(b)(6) motions. <u>Toliver v. City of New York</u>, 2013 U.S. Dist. LEXIS 39894, *4 (S.D.N.Y. March 21, 2013). To defeat a Rule 12(c) or 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570,127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("<u>Twombly</u>")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Thus, a pleading that only offers threadbare recitals of legal elements, supported by mere conclusory statements, does not suffice. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929).

## <u>ARGUMENT</u>

## 1.    **THE PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT**

This Court should grant the plaintiff leave to amend the complaint because there is no (1) undue delay, (2) bad faith, (3) futility of amendment, or (4) undue prejudice to the opposing party.

### A.  <u>There is No Undue Delay</u>

The Courts have held that a lack of bad faith or undue prejudice does not provide a basis for denying the right to amend. <u>Perez</u>, 342 F.R.D. at 381 (quoting <u>State Teachers Ret. Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981)). But, when considerable time has

elapsed between filing the complaint and the motion to amend, the moving party has the burden to provide an explanation for the delay. <u>Cartier, Inc. v. Four Star Jewelry Creations, Inc.</u>, 2004 U.S. Dist. LEXIS 989, at *7 (S.D.N.Y. Jan. 27, 2004) ("<u>Cartier</u>") (citing <u>Evans v. Syracuse City Sch. Dist.</u>, 704 F.2d 44, 46-48 (2d Cir. 1983)).

Still, "'Courts [in the Second Circuit] have granted motions to amend where the litigation has progressed significantly, even past discovery, on the grounds that absent a showing of prejudice, leave to amend should be freely given.'" <u>Domingues v. Walsh</u>, 2023 U.S. Dist. LEXIS 169635, at *4 (S.D.N.Y. Sept. 22, 2023) (quoting <u>Wash. v. Dewey</u>, No. 17-CV-1316, 2019 U.S. Dist. LEXIS 72871, 2019 WL 1921939, at *2 (D. Conn. Apr. 30, 2019)). Furthermore, the court has allowed amendment two and one-half years after the case began and noted that "'even vague or thin reasons [for delay] are sufficient, in the absence of prejudice or bad faith.'" <u>Id.</u> at *6 (cleaned up) (quoting <u>Duling v. Gristede's Operating Corp.</u>, 265 F.R.D. 91, 98 (S.D.N.Y. 2010)).

Although a considerable period of time has passed, there has been no undue delay. Plaintiff's motion to amend his complaint is intended solely to clarify both his IIED and prima facie tort claims. This need for clarification stemmed from a mere oversight and was not intended to delay proceedings. As described below, this passage of time should not affect Plaintiff's motion to amend because of a clear absence of bad faith and prejudice. <u>See</u> <u>Domingues</u>, 2023 U.S. Dist. LEXIS 16935, at *5 (quoting <u>Duling</u>, 265 F.R.D. at 98).

**B.  <u>There is No Bad Faith on Plaintiff's Behalf</u>**

"Bad faith, defined as '[d]ishonesty of belief, purpose, or motive,' is sufficient basis for denial of leave to amend." <u>Davis v. Sedgwick Claims Mgmt. Servs. Inc.</u>, 2023 U.S. Dist. LEXIS 154760, at *54 (S.D.N.Y. Aug. 30, 2023) (quoting <u>Bad Faith</u>, Black's Law Dictionary (11th ed. 2019). "'[T]he fact that a party may have had evidence to support a proposed

8

amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith.'" Agerbrink v. Model Serv. LLC, 155 F.Supp.3d 448, 454 (S.D.N.Y. 2016) (quoting Randolph Foundation v. Duncan, No. 00 Civ. 1172, 2002 U.S. Dist. LEXIS 362, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002). Further, the non-movant[2] must offer more than conclusory allegations of bad faith. See Agerbrink, 155 F.Supp. at 453 (Courts consistently reject conclusory allegations of bad faith).

There is no bad faith on Plaintiff's behalf because Plaintiff's motion to amend his complaint is not rooted in dishonesty of belief, purpose, or motive. Plaintiff initiated this motion to solely clarify both his IIED and prima facie tort claims, aiming to have each claim adjudicated on the merits. Although Plaintiff may have been able to bring this motion earlier in the litigation, that alone does not give rise to an inference of bad faith. See Agerbrink at 454; (quoting Randolph, No. 00 Civ. 1772, 2002 U.S. Dist LEXIS 362, 2002 WL 32862, at *3).

### C. There is No Futility of Amendment

"'A proposed amendment is futile[3] when it could not withstand a motion to dismiss pursuant to Rule 12(b)(6).'" Morris, 2022 U.S. Dist. LEXIS 129953, at *3 (quoting Morales v. New York Univ., No. 20 Civ. 4418 (GBD), 585 F. Supp. 3d 610, 2022 U.S. Dist. LEXIS 35476, 2022 WL 794422, at *1 (S.D.N.Y. Feb. 14, 2022)).

As explained below (Points 2 and 3), Plaintiff's proposed amendment is not futile because the PAC, specifically the amended IIED and prima facie tort claims, can withstand a motion to dismiss pursuant to Rule 12(b)(6).

---

[2] The "'non-movant bears the burden of showing prejudice, bad faith[,] and futility of amendment.'" Perez, 342 F.R.D. at 380 (quoting United States ex. Rel. Raffington, 567 F. Supp. at 438) (cleaned up).
[3] See Id.

### D.  **There is No Undue Prejudice to the Government**

"Undue prejudice[4] arises when an amendment [comes] on the eve of trial and would result in new problems of proof." Agerbrink, 155 F.Supp. 3d at 454 (cleaned up). Additional time, resources, or effort does not constitute undue prejudice, but a district court should consider whether allowing the amendment would require the nonmoving party to expend significant additional resources or significant delay in the resolution of the dispute. Cartier, 2004 U.S. Dist. LEXIS 989, at *10. (citing A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F.Supp. 2d 281, 299 (S.D.N.Y. 2000); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1933)). "This 'inquiry involves a balancing process,' weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied." Agerbrink, 155 F.Supp. 3d at 454 (quoting Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)).

There is no undue prejudice imposed on the Government because Plaintiff's motion to amend did not commence on the eve of trial and will not result in new problems of proof. Plaintiff's motion to amend is not commenced on the eve of trial as a trial date has not been set. Additionally, Plaintiff's amendment will not cause problems of proof, as Plaintiff is not seeking to add new claims, but rather amend existing claims that have been present since the initiation of this lawsuit. (See ECF No. 1).

Similarly, Plaintiff's amendment will not require the Government to expend significant additional resources or significant delay in the resolution of the dispute. As previously mentioned, Plaintiff is only seeking to amend existing claims that have been present since the initiation of this lawsuit. See Id.. Therefore, the Government has been aware of these claims throughout discovery and will not require additional discovery to defend against them. Also,

---

[4] See Id.

there will not be a significant delay in the resolution of this dispute because this dispute has already spanned almost six years and no trial date has been set.

       E.      **The PAC Renders The Government's Motion Moot**

Importantly, in addition to requiring a lack of prejudice and bad faith, this Court has previously found that in assessing leave to amend a complaint, it must "simply determine that the proposed claims are colorable and not frivolous." Johnson-Tucker v. Loyola Sch., No. 23-CV-1351 (JGLC), 2024 U.S. Dist. LEXIS 13473, at *4 (S.D.N.Y. Jan. 25, 2024) (quoting Winstar Commc'ns, 2006 U.S. Dist. LEXIS 7618, 2006 WL 473885, at *2. In direct correlation with the instant motion, it has been well settled that a Court wields the discretion to render a motion for judgment on the pleadings moot when also considering a cross-motion to amend a complaint. See James v. Monroe Cty., No. 20-CV-7094 CJS, 2022 U.S. Dist. LEXIS 211669, at *23 (W.D.N.Y. Nov. 22, 2022) (holding that a Court's discretion allows it to consider denying the motion as moot to even considering the merits of the motion in light of the amended complaint).

Consequently, given the absence of i) undue prejudice, ii) bad faith and iii) futility of the amendments, while factoring a Court's plenary discretion, it is respectfully requested that the Plaintiff be granted leave to submit an amended complaint and the Government's motion be denied as moot.

**2.     THE GOVERNMENT SHOULD BE DENIED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S IIED CLAIM**

Additionally, in direct opposition to the Government's request for judgment on the pleadings, Plaintiff contends that the PAC adequately alleges the required elements and is not duplicative of, or redressable by, other traditional tort remedies.

### A. Precedent Provides This Court The Authority To Assess The Government's Motion Through The Allegations In The PAC

The Second Circuit has previously found that "where a plaintiff **seeks to amend** his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" Conforti v. Sunbelt Rentals, Inc., 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016) (emphasis added) (quoting Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012)). In alignment with the matter at hand, this rule has been parlayed into the assessment of a motion for judgment on the pleadings. James at *23 (the Court disregarded the original Complaint and evaluated the sufficiency of the proposed Amended Complaint under Rule 12(b)(6) when scrutinizing the Defendants' arguments in a motion for judgment on the pleadings).

In consideration of this precedent, the PAC will serve as the basis for Plaintiff's arguments in opposing the Government's motion.

### B. The PAC States A Claim That Sufficiently Pleads All Elements Of IIED

As this Court is aware, the elements of an IIED claim require the Plaintiff to allege i) that extreme and outrageous conduct occurred; ii) that said conduct occurred with the intent to cause emotional distress; iii) that a causal connection between the conduct and alleged injury exists; and iv) that the target of the conduct has suffered severe emotional distress. See Rivera v. City of New York, 392 F. Supp. 2d 644, 657-58 (S.D.N.Y. 2005). It has also been settled that a plaintiff asserting IIED under New York law "must strictly allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as atrocious, and utterly intolerable in a civilized community[.]'" Karupaiyan v. CVS Health Corp., No. 19 CIV. 8814 (KPF), 2021 WL 4341132, at *32 (S.D.N.Y. Sept. 23,

2021) (quoting <u>Dillon v. City of New York</u>, 704 N.Y.S.2d 1, 7 (1st Dep't 1999)); <u>accord</u>

<u>Fischer v. Maloney</u>, 43 N.Y.2d 533, 557 (1978). Due to this high pleading standard, IIED

claims are often deemed "rigorous, and difficult to satisfy." <u>J.H. v. City of Mount Vernon</u>,

No. 18-CV-4399 (CS, 2019 WL 1639944, at *5 (S.D.N.Y. Apr. 15, 2019) (quoting <u>Howell v.</u>

<u>New York Post Co., Inc.</u>, 81 N.Y.2d 115, 121 (1993)); <u>accord</u> <u>Conboy v. AT & T Corp.</u>, 241

F.3d 242, 258 (2d Cir. 2001).

 Despite this high standard, the PAC's IIED claim has facial plausibility to adequately

allege its required elements (<u>see</u> <u>Iqbal</u>, 556 U.S. at 67), specifically, the second element — that

Government officers intended to cause Plaintiff emotional distress. <u>See</u> <u>Rivera</u>, 392 F. Supp.

2d at 657-658. The PAC alleges that a Deportation Officer and other ICE agents threatened to

transfer Plaintiff from Hudson County Corrections Facility ("HCCF") to a far away location

where his family would be unable to contact him. <u>See</u> PAC ¶70. Moreover, the PAC alleges

that the aforementioned acted with the intent to cause, or with a substantial probability of

causing, severe emotional distress when threatening to transfer Plaintiff and remove all contact

from his family whom he deeply values. <u>See</u> <u>Id.</u> ¶70. Thus, the PAC offers specific factual

allegations suggesting intent and has facial plausibility to adequately allege an IIED claim

under New York's "rigorous" pleading standard.

 In addition, the PAC has facial plausibility to adequately allege the first element of an

IIED claim — extreme and outrageous conduct. <u>See</u> <u>Rivera</u>, 392 F. Supp. 2d at 657-658. The

PAC states that the Deportation Officer and other ICE agents' threatened the Plaintiff to

discourage him from filing another grievance. <u>See</u> PAC ¶70. The PAC also alleges that the

aforementioned fulfilled that threat when Plaintiff communicated another complaint in the

manner provided by ICE regulations and procedures, thus plausibly alleging a "deliberate and

malicious campaign." See Id.; Margrabe v. Sexter & Warmflash, P.C., 353 F. App'x 547, 550 (2d Cir. 2009) (quoting Cohn-Frankel v. United Synagogue of Conservative Judaism, 246 A.D.2d 332, 332 (1st Dep't 1998) ("Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment and intimidation."). Overall, the PAC offers specific factual allegations suggesting extreme and outrageous conduct and carries facial plausibility to adequately allege an IIED claim.

### C. The IIED Claim Is Not Predicated On A Single Act

Contrary to the Government's assertions, the IIED claim is not predicated on one (1) single act of force, but rather on a *pattern of behavior* that spanned from the Plaintiff's transfer all the way to his detention in Alabama. The Plaintiff presents allegations not exclusive to the transportation and transfer itself, also alleging lack of proper medical care to treat the injuries sustained. See ¶70 of complaint. Additionally, many other retaliatory acts are pleaded, most of which occurred after the Plaintiff lodged a complaint against the Government agents overseeing his detention. Clearly, the retaliatory acts indicate a pattern of behavior intended to punish the Plaintiff for speaking out against the conditions under which he was being held.

The Government also asserts that the complaint is devoid of any specific allegations suggesting intent. This clearly misrepresents the complaint's content, as it is clearly stated that the situation began far before the actual transportation. Nearly eight (8) months passed between the time the Plaintiff was arrested and the transportation and assault took place, a span that was replete with retaliatory conduct by the Government's agents against the Plaintiffs. See complaint ¶¶38-40.

Thus, the Plaintiff's IIED claim is sufficiently pleaded, does not rely exclusively on conclusory assertions, and does not, in any way, claim only one (1) single act.

### D.  **The IIED Claim Is Not Duplicative of Other Torts Claims**

"'A claim for IIED may not be sustainable where the conduct complained of falls well within the ambit of other tort liability.'" Roelcke v. Zip Aviation, LLC, 571 F. Supp. 3d 214, 236 (S.D.N.Y. Nov. 23, 2021) (quoting Turley v. ISG Lackawanna Inc., 774 F.3d 140, 157 (2d Cir. 2014)); accord McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 335 (E.D.N.Y. 2002) ("IIED claims that are duplicative of other torts claims" should be dismissed).

Plaintiff's amended IIED claim does not fall within Plaintiff's other tort claims. Plaintiff's amended IIED claim is premised solely on the Deportation Officer and ICE agents' threat, and their fulfillment of that threat. See PAC ¶70. In contrast, the remainder of Plaintiff's claims are based on other conduct such as his arrest, and when John Doe #1 and John and Jane Does #7-19 handcuffed and abused Plaintiff. To date, the defendants have no explanation as to why Plaintiff was separated from the rest of the detainees being transported to Varick Street.[5] They also cannot explain why they secluded him in a room by himself[6] and why/how he ended up on the floor with almost ten (10) ICE agents forcibly putting him in a five-point restraint. Additionally, there is no testimony or evidence that Plaintiff was a violent individual who posed a threat of the magnitude the Defendant ICE agents conjured him up to be. There was no reason given or demonstrated by ICE showing that Plaintiff needed to be forcibly transported in the manner that he was other than to vindictively exert their power to intimidate and frighten Plaintiff, which they did. See Id. ¶¶66; Roelcke, 571 F. Supp. 3d at 236 (Defendants IIED claim was not duplicative of his abuse of process claim because it

---

[5] See Weidlein Depo. Transcript pg 76:13-21 and pg 279:7-12
[6] See Weidlein Depo. Transcript pg 99:25 and pg 100:1–25

15

included a broader pattern of conduct while the abuse of process claim was solely premised on plaintiff's initiation of certain judicial proceedings).

Thus, because Plaintiff's amended IIED claim does not fall within Plaintiff's other tort claims, it should not be dismissed for being duplicative.

### E. The IIED Claim Is Properly Pled And Should Not Be Dismissed

Because the IIED claim in the PAC satisfies all required elements, is predicated on a pattern of deliberate behavior, and does not fall within Plaintiff's other tort claims, the IIED claim should withstand the Government's motion.

### 3. THE GOVERNMENT SHOULD BE DENIED JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S PRIMA FACIE TORT CLAIM

This Court should deny the Government a judgment on the pleadings with respect to the prima facie tort claim because it is adequately pleaded and not duplicative of other traditional tort theories.

### A. The Complaint States a Claim for Prima Facie Tort

"Prima facie tort affords a remedy for the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142 (1985) (internal quotation marks omitted). Freihofer further establishes that the requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful. Id. at 142-143.

"A critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages." Id. at 143. Under New York law, "special damages" are damages that are "alleged with sufficient particularity to

identify actual losses...[that are] related usually to the alleged tortious acts." Barone v. United States, No. 12-CV-4103 (LAK), 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016), aff'd, 722 F. App'x 57 (2d Cir. 2018) (quoting Epifani v. Johnson, 65 A.D. 3d 224, 233 (2d Dep't 2009)). Special damages must be "fully and accurately stated" and cannot be "conjectural in identity and speculative amount." Id. (internal citations omitted). "[R]ound sums without any attempt at itemization are insufficient." Id. (quoting Bear, Stears Funding Inc. v. Interface Grp.-Nevada, Inc., 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005)).

The PAC states a claim for prima facie tort because it has facial plausibility to adequately allege its required elements. See Iqbal, 556 U.S. at 67. Specifically, the PAC has facial plausibility to adequately allege the second element of prima facie tort--special damages. See Freihofer, 65 N.Y.2d at 142-143. The PAC asserts that the Plaintiff has incurred "special damages," identified what the special damages are, and itemized and calculated the alleged losses. See PAC ¶¶102–105, and Prayer for Relief. Because the PAC offers specific factual allegations to allege special damages with sufficient particularity, it has facial plausibility to adequately allege an prima facie tort claim.

In addition, to state a claim for prima facie tort, a plaintiff must plausibly allege that the challenged act or series of acts would have been lawful absent the intent to inflict harm. Freihofer, 65 N.Y.2d at 142. Here, the PAC has facial plausibility to adequately allege an act or series of acts which would otherwise be lawful, absent the intent to inflict harm. See Freihofer, 65 N.Y.2d at 142. The PAC asserts that Plaintiff's transfer is a lawful act, as the transfer of a detainee is lawful when conducted in ordinary situations. See PAC ¶102. Although the PAC identifies retaliation, assault, battery, failure to provide plaintiff with proper medical attention, and breaches of the Government's duty of care, the overarching act is the

otherwise lawful transportation itself. See Id. Because the PAC offers specific factual allegations suggesting an act which would otherwise be lawful, it has facial plausibility to adequately allege an prima facie tort claim.

Thus, because the PAC has facial plausibility as it adequately alleges special damages, to wit, future lost economic opportunity in the amount of $3,132,574.00 (See PAC ¶105) suffered as a result of "an act which would otherwise be lawful," Plaintiff has stated a claim for prima facie tort and the Government's judgment on the pleadings should be denied.

### B. The Prima Facie Tort Claim Is Not Duplicative of Other Torts Claims

Some courts in the second circuit have held that,[7] "a set of facts giving rise to a common-law tort is fatal to a prima facie tort claim . . . for 'once a traditional tort is established the cause of action for prima facie tort disappears.'" Chen v. United States, 854 F.2d 622, 628 (2d Cir. 1988) (quoting Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)); accord Matthaus v. Hadjedj, 148 A.D.3d 425, 426 (1st Dep't 2017). On the other hand, the New York Court of Appeals stated that "'where traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative relief, a cause of action for prima facie tort.'" Barone, 2016 U.S. Dist. LEXIS 59946, at *10 (quoting Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 266, 771 N.Y.S.2d 20, 22-23 (1st Dep't 2002).

Although the PAC identifies retaliation, assault, battery, failure to provide proper medical attention, and breaches of the Government's duty of care, the prima facie tort claim is based on the collective wrongdoing that Plaintiff suffered, from the injurious transportation to the breaches of medical attention itself. It is due to this pattern of egregious conduct that the

---

[7] See Barone v. United States, 2016 U.S. Dist. LEXIS 59946, at *10 (S.D.N.Y. May 5, 2016) (quoting Rother v. N.Y. State Dep't of Corrections and Cmty. Supervision, 970 F.Supp. 2d 78, 106 (N.D.N.Y. 2013) (emphasis added) ("*Some* courts in this circuit have dismissed *prima facie* tort claims as duplicative of IIED claims on the simple basis that '[a] duplicative prima facie tort claim must be dismissed.'").

Plaintiff's prima facie tort claim stands steady on the allegations presented. Cf. Belsky v. Lowenthal, 62 A.D.2d 319, 323, 405 N.Y.S.2d 62, 65 (App. Div. 1st Dept. 1978). Even if this Court finds that Plaintiffs' amended prima facie tort claim is duplicative, it should not be dismissed, as the courts in the Second Circuit are undecided on whether to dismiss a prima facie tort claim when other traditional tort remedies exist. See Barone, 2016 U.S. Dist. LEXIS 59946, at *10 (quoting Vigoda, 293 A.D.2d at 266).

### C. **The Prima Facie Tort Claim Is Properly Pled And Should Not Be Dismissed**

Thus, because Plaintiff's amended prima facie tort claim is based on a pattern of behavior rather than an isolated incident, any ambiguity in the Second Circuit on whether to dismiss such a claim when other traditional tort remedies exist should enable this court to reject the Government's assertions that the claim is duplicative.

### CONCLUSION

For the above stated reasons, the Plaintiff requests that this Court i) grant leave to amend his complaint and ii) deny the Government's request for judgment on the pleadings with respect to the IIED and prima facie tort claims.

Dated: September 3, 2024
New York, New York

Respectfully submitted,

_____
Rehan Nazrali, Esq.