USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

FELIX NKANSAH,

                Plaintiff,

    -against-                           18-CV-10230 (KMW)

UNITED STATES OF AMERICA,         **OPINION & ORDER**

                Defendant.
----------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

       Plaintiff Felix Nkansah ("Plaintiff") brings this action against the United States alleging assault, battery, intentional infliction of emotional distress ("IIED"), and prima facie tort, in connection with alleged mistreatment Plaintiff suffered in the custody of Immigration and Customs Enforcement ("ICE").

       Under Federal Rule of Civil Procedure 12(c), the Government has moved for partial judgment on the pleadings on Plaintiff's IIED and prima facie tort claims. (Gov't Mot., ECF No. 162; Gov't Mem., ECF No. 163.) Plaintiff filed an opposition brief, cross-moving to amend the complaint, specifically proposing amendments to his IIED and prima facie tort claims in response to the Government's opening arguments. (Pl. Opp'n, ECF No. 172.) The Government filed a reply in further support of its motion for partial judgment on the pleadings and in opposition to Plaintiff's motion to amend. (Gov't Reply, ECF No. 182.) Finally, Plaintiff filed a reply in further support of the cross-motion to amend. (Pl. Reply, ECF No. 188.)

       For the reasons set forth below, the Government's motion for partial judgment on the pleadings is GRANTED and Plaintiff's cross-motion to amend is DENIED.

# BACKGROUND

Unless otherwise noted, the following facts are drawn from Plaintiff's Proposed Amended Complaint ("PAC"), ECF No. 172-1, and are accepted as true for purposes of the Government's Rule 12(c) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017); *see also Altman Stage Lighting, Inc. v. Smith*, No. 20-CV-2575, 2022 WL 374590, at *1 (S.D.N.Y. Feb. 8, 2022) (Román, J.) (accepting facts alleged in plaintiff's proposed amended complaint as true for purposes of deciding defendant's motion for judgment on the pleadings and plaintiff's motion for leave to amend the complaint).

## I. Plaintiff's Allegations

Plaintiff is a resident alien. (PAC ¶ 2.) On the morning of December 17, 2014, Plaintiff was arrested at his home in East Orange, New Jersey and taken to the Hudson County Correctional Facility ("HCCF") in Kearny, New Jersey. *Id.* ¶ 37. At the time, HCCF held immigration detainees "pursuant to an intergovernmental contract with ICE." (Gov't Mem. at 2 n.2.) After Plaintiff arrived at HCCF, he filed a complaint alleging that several unidentified ICE agents involved in his arrest had removed personal property from his residence and failed to return it. (PAC ¶ 37.) On August 10, 2015, Plaintiff filed another complaint, alleging that a "Deportation Officer, believed to be Officer Zapata," had denied Plaintiff legal calls and that "funds sent by an NGO for [Plaintiff's] benefit had not been distributed to him." *Id.* ¶ 38. In response to this complaint, Officer Zapata "threatened to transfer [Plaintiff] from [HCCF] to a far away location where [Plaintiff's] family would be unable to contact him." *Id.* On August 12, 2015, Plaintiff reported this threat "to other ICE officers present at his unit and made a call to the ICE 'Hot Line[,]'" complaining about the conditions at HCCF, including inadequate heat and the facility's failure to treat an ear infection Plaintiff developed while in custody. *Id.* ¶¶ 38, 40.

On August 17, 2015, unidentified ICE agents transferred Plaintiff from HCCF to a detention facility at 201 Varick Street in New York ("Varick Street"). *Id.* ¶ 39. He was moved with no warning, in retaliation for his complaints, and in keeping with the prior threat to transfer him to a more remote facility. *Id.* Upon arriving at Varick Street, Plaintiff was placed alone in a cell, where four to five ICE agents pushed Plaintiff to the floor and struck him, and one agent forcefully pressed their knee into Plaintiff's back. *Id.* ¶ 41. Plaintiff alleges he was then "shackled by his hands and feet and lifted by a chain," which caused him to bleed and suffer nerve damage. *Id.* ¶¶ 43–44. ICE agents then placed a hood over Plaintiff's head and began transporting him to Newark Airport, during which he "passed out" and the agents "did nothing to revive him." *Id.* ¶ 45. Plaintiff briefly regained consciousness while on a plane to Louisiana, after which agents refused his requests to remove the hood. *Id.* ¶¶ 45, 47. Upon landing in Louisiana, Plaintiff had to be removed from the plane in a wheelchair due to severe pain in his wrists and ankles. *Id.* ¶ 47.

On August 18, 2015, Plaintiff was transferred to Etowah County Detention Center ("EDC") in Gadsden, Alabama. *Id.* ¶ 46. The next day, on August 19, 2015, Plaintiff was sent to Riverview Regional Medical Center ("Riverview"), also in Gadsden, for medical evaluation. *Id.* ¶ 48. At Riverview, Plaintiff was diagnosed with "malaise, anorexia and depression," but failed to receive treatment for his nerve injuries. *Id.* ¶¶ 48–49.

Plaintiff was held at EDC from August 19, 2015 to March 2016, during which he made repeated requests for medical evaluation, but his nerve injuries remained untreated. *Id.* ¶ 51.

### II. Procedural History

On November 9, 2018, Plaintiff filed the original Complaint, asserting 16 claims against

the Government and 36 Doe Defendants. (Compl., ECF No. 1.) Against the Government, Plaintiff asserted various tort claims and constitutional violations under the Federal Tort Claims Act ("FTCA"), specifically: (i) assault; (ii) battery; (iii) IIED; (iv) excessive force; (v) negligent infliction of emotional distress; (vi) false arrest and imprisonment; (vii) prima facie tort; (viii) medical negligence; (ix) negligent hiring, training, and retention; (x) negligence; (xi) negligent guard violations; and (xii) negligent handling of bailment. *Id.* ¶¶ 61–143. Against the Doe Defendants, Plaintiff asserted four claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* claims"), specifically: (i) false imprisonment; (ii) failure to intervene; (iii) cruel and unusual punishment; and (iv) deliberate indifference. *Id.* ¶¶ 144–185.

Plaintiff's claims have been whittled down over time through a combination of motions practice and joint stipulation. On March 24, 2020, Judge Crotty granted in part and denied in part the Government's partial motion to dismiss, dismissing three of Plaintiff's FTCA claims. (Opinion & Order, ECF No. 36.) On November 23, 2021, Judge Crotty adopted a Report & Recommendation from Magistrate Judge Cave, ECF No. 74, denying Plaintiff leave to amend his complaint to substitute the Doe Defendants with their names and dismissing the four *Bivens* claims as time-barred. (Order, ECF No. 79.) On July 13, 2022, Judge Crotty so-ordered the parties' Stipulation and Order voluntarily dismissing five FTCA claims with prejudice. (ECF No. 99.)

The matter was transferred to this Court on April 15, 2024. Four claims brought under the FTCA remain: (i) assault; (ii) battery; (iii) intentional infliction of emotional distress; and (iv) prima facie tort.

4

**LEGAL STANDARD**

The standard for analyzing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009) (per curiam) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).  While a Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor," *In re Thelen LLP*, 736 F.3d 213, 218–19 (2d Cir. 2013), that principle does not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" (internal quotations and alterations omitted)).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" *Iqbal*, 556 U.S. at 678, and the Court disregards any conclusory statements in a complaint, *id.* at 679.

**DISCUSSION**

The Government argues that Plaintiff's IIED and prima facie tort claims should be dismissed for failure to state a claim.[1] The Court agrees and dismisses both claims with prejudice.

**I. Plaintiff Has Failed to State a Claim for IIED**

In order to assert a valid claim for IIED under New York law, a plaintiff must demonstrate: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).

IIED is a "highly disfavored tort under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (alteration and citation omitted). This is because New York sets a high threshold for conduct to constitute IIED—the conduct must be "extreme and outrageous." *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). To satisfy the "extreme and outrageous" standard, a plaintiff must describe conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.*,

---

[1] The Government also argues that the IIED and prima facie tort claims are duplicative of Plaintiff's assault and battery claims, because under New York law, the alleged conduct underlying the IIED and prima facie tort claims must be addressed through the traditional tort remedies of assault and battery. *See* Gov't Mem. at 10–12, 15–17. Plaintiff has since proposed amendments to his complaint which recharacterize the alleged facts underlying the IIED and prima facie tort claims. *See* Pl. Opp'n at 1, 15 ("Plaintiff's amended IIED claim is premised solely on the Deportation Officer and ICE agents' threat [to send Plaintiff to a far away location], and their fulfillment of that threat."), 18 ("[T]he [amended] prima facie tort claim is based on the collective wrongdoing that Plaintiff suffered, from the injurious transportation to the breaches of medical attention itself." (emphasis omitted)); PAC ¶¶ 70–75, 102–103, and 105. Because the IIED and prima facie tort claims are insufficient on their own, the Court does not address the duplication arguments.

762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)).

Whether the alleged conduct is sufficiently extreme and outrageous is a matter of law for the court to decide.  *See Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing Restatement (Second) of Torts § 46 cmt. h (Am. Law Inst. 1965)).  Courts in this circuit are reluctant to allow recovery for IIED "absent a deliberate and malicious campaign of harassment or intimidation." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009) (summary order) (citing *Cohn-Frankel v. United Synagogue of Conservative Judaism*, 667 N.Y.S.2d 360, 362 (1st Dep't 1998)).

The facts alleged in the PAC do not rise to the level required to state a claim for IIED under New York law.  Plaintiff asserts merely conclusory allegations that track the required elements of IIED: he alleges only that ICE officers "variously engaged in extreme and outrageous conduct, namely the [] threat that if plaintiff filed another grievance, plaintiff [would] be transferred from [HCCF] to a far away location where his family [would] be unable to contact him, [and] taking action on that threat[.]"  *See* PAC ¶ 70; *see also Searles v. United States*, No. 21-CV-6570, 2022 WL 2829912, at *6 (S.D.N.Y. July 20, 2022) (Abrams, J.) ("Merely stating that the conduct is extreme and outrageous and caused mental suffering, embarrassment, and humiliation without specific facts or circumstances to support plaintiff's allegations fails even the liberal pleading standard of Rule 12(b)(6)." (citations and internal quotations omitted)).

The PAC fails to allege that Defendant engaged in any conduct approaching the "deliberate and malicious campaign of harassment or intimidation" that courts have found to support an IIED claim.  *Margrabe*, 353 F. App'x at 550.  The ICE agents' threat to transfer Plaintiff to a "far away location where his family [would] be unable to contact him" and carrying

7

out that threat does not meet the rigorous IIED standard—that the agents' conduct went "beyond all possible bounds of decency." *See, e.g.*, *Leontiev v. Varshavsky*, No. 16-CV-3595, 2016 WL 4939080, at *2, *4 (S.D.N.Y. Sept. 2, 2016) (Rakoff, J.) (dismissing IIED claim as insufficiently outrageous where complaint alleged that defendant engaged in a "systematic and unrelenting campaign of threats, intimidation, and harassment," including threatening to have the Russian government arrest plaintiff).

Even assuming Plaintiff could show that the conduct was sufficiently "extreme and outrageous," Plaintiff fails to establish that the Government intended to cause him severe emotional distress. In pleading intent, Plaintiff relies only on conclusory allegations. PAC ¶ 70 ("[The threat to transfer Plaintiff to a far away location was] done with the intent to cause, or with the intentional disregard of a substantial probability of causing, severe emotional distress[.]"); *see Hanly v. Powell Goldstein, LLP*, No. 05-CV-5089, 2007 WL 747806, at *6 (S.D.N.Y. Mar. 9, 2007) (Wood, J.) (dismissing IIED claim because plaintiffs' conclusory allegations could not establish defendants intended to cause severe emotional distress), *aff'd* 290 F. App'x 435 (2d Cir. 2008) (summary order). Plaintiff's IIED claim is therefore dismissed with prejudice.

### II. Plaintiff Has Failed to State a Claim for Prima Facie Tort

To state a claim for prima facie tort under New York state law, a plaintiff must allege: (i) the intentional infliction of harm; (ii) resulting in special damages; (iii) without excuse or justification; (iv) by an act or series of acts which would otherwise be lawful. *See Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.*, 850 F.2d 876, 882 (2d Cir. 1988); *accord Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 354 (N.Y. 1985). The second element, special damages, "must be alleged with sufficient particularity to identify actual losses, [and] round

sums without any attempt at itemization are insufficient." *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005) (Haight, J.) (citations omitted).  The actual losses must be causally related to the alleged tortious acts and cannot be "conjectural in identity and speculative in amount." *Barone v. United States*, No. 12-CV-4103, 2016 WL 2658174, at *4 (S.D.N.Y. May 5, 2016) (Kaplan, J.) (quoting *Vigoda v. DCA Prods. Plus Inc.*, 741 N.Y.S.2d 20, 22–23 (1st Dep't 2002) (dismissing prima facie tort claim where "[a]ll that plaintiffs have alleged [as special damages] is lost future income")).

Plaintiff has failed to allege with sufficient particularity actual losses related to his prima facie tort claim.  Although Plaintiff asserts that the PAC now "identifie[s] what the special damages are, and itemize[s] and calculate[s] the alleged losses" (Pl. Opp'n at 17, citing PAC ¶¶ 102–105), no itemization can be found anywhere in the PAC.  Plaintiff's bare request for "special damages for lost economic opportunities . . . in the amount of $3,132,574.00 an amount not lower than the amount previously claimed before the administrative agency in this action," PAC ¶ 105, without any attempt at itemization, is insufficient.[2]  *See NE Brands LLC v. Seattle Pac. Indus., Inc.*, No. 19-CV-7420, 2020 WL 4287989, at *2 (S.D.N.Y. July 27, 2020) (Daniels, J.) (holding that plaintiff failed to plead special damages where complaint requested "at least one-million dollars . . . [plaintiff] suffered as a consequence of Defendants' prima facie tort," without any itemization).

Moreover, Plaintiff fails to explain the relationship between the damages claimed and any injury plaintiff allegedly suffered—how any of the alleged conduct "resulted in" special damages.  *See Barone*, 2016 WL 2658174, at *4.  Plaintiff's failure to plead special damages,

---

[2] The Government notes that the $3,132,574.00 figure originates from the initial expert report of Plaintiff's retained economist.  That report has since been withdrawn and replaced with a corrected report alleging a "significantly lower" economic loss.  (Gov't Reply at 4.)  Neither report was appended to the PAC or Plaintiff's reply brief.

9

even when given the opportunity to do so in the PAC appended to his cross-motion to amend, renders his claim fatally defective. The Court therefore dismisses the prima facie tort claim with prejudice.

### III. Leave to Amend Is Denied on the Grounds of Undue Delay and Futility

Plaintiff cross-moves for leave to amend the Complaint, appending the PAC to his motion. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, . . . or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision of whether to grant leave to amend is "within the sound discretion of the court." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 182).

As an initial matter, Plaintiff concedes that the PAC is procedurally improper. (Pl. Reply at 4.) Most egregiously, as the Government points out, the PAC restates the 12 claims dismissed with prejudice in March 2020, November 2021, and July 2022.[3] (Gov't Reply at 9.) These issues aside, Plaintiff's request to amend this late in the litigation, after the close of three and a half years of discovery, constitutes undue delay warranting denial. *Compare* Scheduling Order, ECF No. 47 (dated Sept. 16, 2020), *with* Letter Certifying Close of Expert Discovery, ECF No. 146 (dated Apr. 5, 2024); *see also Cnty. of Washington v. Cntys. of Warren & Wash. Indus. Dev. Agency*, 2 F. App'x 71, 75 (2d Cir. 2001) (summary order) (affirming denial of Rule 15(a)

---

[3] In addition, the Government argues that Plaintiff did not attach a clean copy of the PAC, as required by the Local Civil Rules, and purported to show all proposed changes in red font, but failed to so accurately. (Gov't Reply at 7–8.)

motion due to plaintiff's undue delay of more than four years, where proposed amendments did not rely on newly discovered facts and plaintiff was aware of factual underpinnings of claims from the outset of the litigation). Here, Plaintiff was aware of the facts underlying the PAC's proposed amendments, but waited more than six years to seek leave to amend, claiming that his six-year delay was warranted by his "need to clarify an oversight [that] arose in conjunction with the defendant's motion[.]" (Pl. Reply at 5.)

Furthermore, leave to amend in this case would be futile. Although Plaintiff casts his request to "clarify" his IIED and prima facie tort claims as "stemm[ing] from a mere oversight," Pl. Opp'n at 8, Plaintiff's motion relies on a new theory of IIED. This new theory is based on the alleged threat by an officer at HCCF on August 10, 2015, rather than the "assault, battery, excessive force, [and] placing [of] a hood over [Plaintiff's] head during transport" that occurred at Varick Street and in transit to Newark Airport on August 17, 2015, as detailed in the original pleading. *Compare* Compl. ¶¶ 69–74, *with* PAC ¶¶ 69–77. Denial of leave to amend is proper when a plaintiff attempts to assert new facts or theories he could have raised sooner. *See Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303–04 (S.D.N.Y. 1997) (Kaplan, J.), *aff'd* 116 F.3d 465 (2d Cir. 1997). This is particularly so "where it appears that a plaintiff's purpose in asserting a new [theory] is his or her anticipation of an adverse ruling on the original claims." *Bymoen v. Herzog, Heine, Geduld, Inc.*, No. 88-CV-1796, 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (Wood, J.). And as the Court has explained above, the proposed amendments do nothing to cure the deficiencies in Plaintiff's IIED and prima facie tort claims. Permitting Plaintiff to file the PAC would therefore be futile and would needlessly burden counsel and the Court. Thus, the Court denies Plaintiff's motion for leave to amend the complaint. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) ("Granting leave

to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.").

## CONCLUSION

For the reasons stated above, the Court grants the Government's motion for partial judgment on the pleadings and denies Plaintiff's cross-motion to amend the complaint. The Clerk of Court is respectfully directed to close the pending motion at ECF No. 162.

SO ORDERED.

Dated: New York, New York
       March 28, 2025                                  /s/ Kimba M. Wood
                                                     KIMBA M. WOOD
                                                   United States District Judge