UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

FELIX NKANSAH,

               Plaintiff,

      -against-

UNITED STATES OF AMERICA,

               Defendant.

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   May 28, 2026

18-CV-10230 (KMW)

**<u>OPINION & ORDER</u>**

KIMBA M. WOOD, United States District Judge:

Plaintiff Felix Nkansah ("Plaintiff") brings this action against the United States, for assault and battery, after Immigration and Customs Enforcement ("ICE") officers allegedly mistreated Plaintiff while he was in their custody on August 17, 2015.[1] Plaintiff moves for summary judgment on *all* his claims, including those that were previously dismissed, arguing that he presented unrebutted evidence to demonstrate that the ICE officers' actions violated the Federal Tort Claims Act ("FTCA"). Because there are material disputes of fact regarding whether the officers' actions were reasonable, the Court denies Plaintiff's motion for summary judgment.

### I.      Background[2]

On August 17, 2015, ICE agents brought Plaintiff to the ICE facility at 201 Varick Street, New York, New York ("Varick Street") for processing in preparation for Plaintiff's transfer to an

---

[1] The remainder of Plaintiff's allegations have been dismissed either by this Court or voluntary stipulation. *See* Mar. 24, 2020 Op. & Order, ECF No. 36; Nov. 23, 2021 Order, ECF No. 79; July 13, 2022 Stipulation and Order, ECF No. 99; Mar. 28, 2025 Op. & Order, ECF No. 193.

[2] Unless noted otherwise, all factual statements are undisputed.

ICE facility in Alabama. What happened after his arrival at Varick Street is the subject of this motion.

## II.     Procedural History

On November 9, 2018, Plaintiff filed the original Complaint, asserting 16 claims against the Government and 36 Doe Defendants. (Compl., ECF No. 1.) Plaintiff's claims have been whittled down over time through a combination of motions practice and joint stipulation[3] Two claims brought under the FTCA remain: (i) assault and (ii) battery. Plaintiff has moved for summary judgment on both claims. (ECF No. 205.)

## LEGAL STANDARD

## I.     Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [the nonmoving party's] favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). A court's "function is not to weigh the evidence, make credibility determinations or

---

[3] *See supra* note 1.

resolve issues of fact," but rather to determine whether there are issues to be tried. *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997).

To demonstrate the existence of a genuine issue of material fact, "[t]he opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R. Civ. P. 56, setting forth specific facts showing there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The nonmoving party successfully demonstrates a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008)) (internal quotation marks omitted).

## II.    The Federal Tort Claims Act

The FTCA functions as a "partial waiver" to the doctrine of sovereign immunity. *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996). "Although assault and battery claims against the federal government are usually prohibited, the FTCA permits such claims where, as here, federal law enforcement officers are alleged to have committed assault or battery." *Cuoco v. U.S. Bureau of Prisons*, 2003 WL 22203727, at *4 (S.D.N.Y. Sept. 22, 2003) (Pauly, J.) (citing 28 U.S.C. § 2680(h)); *see also Leytman v. United States Dep't of Homeland Sec. Transportation Sec. Admin.*, 804 F. App'x 78, 80 (2d Cir. 2020) (summary order).

Under New York law, an "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact" and a "battery" is an intentional wrongful physical contact with another person without consent. *See, e.g., Green v. City of New York*, 465 F.3d 65,

3

86 (2d Cir. 2006)[4] Within the context of allegations against law enforcement, "New York law regarding assault and battery generally parallels federal law regarding excessive force." *Gomez v. City of New York*, No. 05-CV-2147, 2007 WL 5210469, at *11 (S.D.N.Y. May 28, 2007) (Francis IV, J.) (citing *Kramer v. City of New York*, No. 04-CV-106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004)).

To make out a constitutional claim of excessive force, a detainee must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, (2015). Whether force was unreasonable "turns on the facts and circumstances of each particular case." *Id.*

## DISCUSSION

Plaintiff contends that ICE officers assaulted him while they prepared to fly him to an ICE facility in Alabama. The Government disputes this version of the facts, as is set forth below.

### I.    Genuine Disputes of Material Fact

Plaintiff claims that several hours after he arrived at Varick Street, ICE officers entered his cell, and that from then on, he was "compliant, posed no threat, and received no verbal commands" before officers used force. (Pl.'s Mot. for Summ. J., ECF No. 205, at 15-16.) He claims that officers wordlessly placed their hands on him, picked him up from his seated position and slammed him onto the floor. (Pl.'s 56.1 Statement, ECF No. 205, ¶¶ 33-36.) He claims that while he was on the ground, ICE officers punched and kicked him; and one officer placed a knee

---

[4] New York State law applies to Plaintiff's FTCA claims because the alleged conduct occurred in New York. *See* 28 U.S.C. § 1346 (b)(1); *see also Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (applying New York law to a FTCA claim).

on him. (*Id.* ¶ 39-42.) Officers allegedly picked Plaintiff up by the chains after restraining him. (*Id.* ¶ 86-89.)

The Government alleges, instead, that Plaintiff became resistant after learning that he was about to be transferred to another facility in Alabama. (Gov't Resp., ECF No. 223, ¶¶ 33-35.) According to the Government, Plaintiff at first held his arms and legs close to his body to prevent officers from applying restraints[5] (Weidlein Decl., ECF No. 220, ¶ 23.) Plaintiff then began struggling with the officers and kicking them. Plaintiff refused officers' commands to "relax" and to "stop resisting." (*Id.* ¶ 24; Folajaiye Decl., ECF No. 221, ¶ 14.) Officers eventually restrained Plaintiff by applying handcuffs, leg shackles, and a belly chain. (Gov't Resp. ¶¶ 86, 132.) Plaintiff continued to attempt to kick officers after being placed in those restraints. (*Id.* ¶ 46; Weidlein Decl. ¶ 24; Folajaiye Decl., ¶ 13.) At that point, officers restrained Plaintiff by placing zip ties on his feet and, ultimately, placing him in a Humane Restraint Blanket. (Gov't Resp., ¶¶ 46, 130; Weidlein Decl., ¶ 24.) SDDO Weidlein denies ever having "slammed[,] gratuitously kicked or punched[,] put a knee into [the back of,] or lifted" by the chains, a detainee, and SDDO Folajaiye denies ever having beaten a detainee. (Weidlein Decl., ¶ 28; Folajaiye Decl., ¶ 17.)

Each party submits their own evidence to demonstrate their respective narratives. Plaintiff submits his own deposition testimony, along with exhibits A through S, which appear to be a mixture of deposition transcripts, expert reports and disclosures, ICE Use of Force Policies, and placeholders for video evidence of the incident. Apart from Plaintiff's deposition, none of these exhibits appear to shed any light on the events at issue in this motion. The Government

---

[5] On August 17, 2025, Thomas Weidlein was the Supervisory Detention and Deportation Officer ("SDDO") on duty. Hakeem Folajaiye was an officer working under SDDO Weidlein's supervision that day.

submits declarations from SDDOs Weidlein and Folajaiye, as well as video evidence of the incident, deposition transcripts, and ICE Use of Force policies.

The video evidence does not show Plaintiff being struck or assaulted in any way. It shows Plaintiff struggling against officers' attempts to restrain him: stiffening his arms and legs, kicking at officers, banging his head on the floor, and refusing to comply with commands that can be heard to "relax" and "stop resisting." Plaintiff asserted that the video either was edited to remove the assault and battery he claims, or that the person recording did not start recording until after Plaintiff had been assaulted. (Pl. Tr. at 170:7-171:5; 342:13-23.)

On this record, the Court finds that there are material facts in genuine dispute that prevent the grant of summary judgment in favor of Plaintiff, specifically, whether the ICE officers used unreasonable force against Plaintiff.

## II.    Plaintiff is Not Entitled to Summary Judgment on Claims That Have Already Been Dismissed

Plaintiff also seeks summary judgment on his claims for negligence, negligent guarding, gross negligence, and negligent infliction of emotional distress. But this Court already so-ordered the parties' stipulation to dismiss those claims with prejudice. Plaintiff's motion for summary judgment on these claims, therefore, is DENIED.

## III.    The Court Will Defer Ruling on the Government's *Daubert* Motion Until After the Final Pretrial Conference

The Government seeks to exclude the testimony of Plaintiff's experts–Dr. Richard Lucas, Dr. Carlos Figarola, and Paul Gazaleh–because such testimony fails to satisfy the requirements of Federal Rule of Civil Procedure 702. (ECF No. 207.) The Court will rule on the motion after the Final Pretrial Conference.

**CONCLUSION**

For the reasons stated above, the Court denies Plaintiff's motion for summary judgment. The Clerk of Court is respectfully directed to close the pending motion at ECF No. 205.

The parties shall submit to the Court by June 26, 2026, letters outlining the steps that need to be taken before the case is ready for trial. The parties shall file a pretrial order by July 24, 2026. By that date, the parties shall also advise the Court whether they consent to a trial before a Magistrate Judge. Motions *in limine* are due on August 14, 2026. Any opposition shall be due on August 28, 2026. The case will be deemed ready for trial on September 7, 2026. A pretrial conference shall be set in another order.

SO ORDERED.

Dated: New York, New York
        May 28, 2026                                   */s/ Kimba M. Wood*
                                                        KIMBA M. WOOD
                                                   United States District Judge

7