USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: November 4, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

FELIX NKANSAH,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

-----------------------------------------------------X

18-CV-10230 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

On May 28, 2026, this Court denied Plaintiff's motion for summary judgment against Defendant United States for assault and battery. (ECF No. 232). The Court found material facts in genuine dispute; specifically, whether ICE officers used unreasonable force against Plaintiff while in custody. *Id.* at 6. In the Court's Opinion and Order, the Court detailed this case's procedural and factual background, familiarity with which is assumed. *Id.*

Plaintiff designates two witnesses to offer expert testimony on Plaintiff's post-traumatic stress disorder diagnosis ("PTSD") and to respond to the Government's rebuttal report on forensic psychology, Dr. Richard Lucas and Dr. Carlos Figarola; and one witness to testify regarding Plaintiff's alleged lost income, Mr. Paul Gazaleh. Under Rule 702 of the Federal Rules of Evidence, Defendant moves to preclude in part the testimony of Dr. Lucas, and to preclude entirely the testimonies of Dr. Figarola and Mr. Gazaleh. (ECF No. 206). As set forth in more detail below, Defendant's motion is GRANTED.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has assigned to district courts a "gatekeeping" role with respect to expert opinion testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). A court's inquiry focuses on three issues: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005). The party seeking to rely on expert testimony bears the burden of establishing, by a preponderance of the evidence, that all requirements have been met. *See Daubert*, 509 U.S. at 592 n.10; *United States v. Pollok*, 139 F.4th 126, 140 (2d Cir.).

### I. Qualification of an Expert

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020) (quoting *Nimely*, 414 F.3d at 395). Whether an expert witness is qualified is a "threshold question" to be resolved prior to the other inquiries. *Nimely*, 414 F.3d at 396 n.11; *see Zaremba v. Gen. Motors Corp.,* 360 F.3d 355, 360 (2d Cir. 2004) (stating that where an expert witness is insufficiently qualified, an analysis of the remaining factors "seems almost superfluous").

To determine whether a witness is qualified as an expert, a court "must ascertain whether

the proffered expert has the educational background or training in a relevant field," *Averbach v. Cairo Amman Bank*, 802 F. Supp. 3d 605, 628 (S.D.N.Y. 2025) (Parker, M.J.) (citation omitted), by looking at the "totality of [the] witness's background," *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (Katz, M.J.) (citation omitted). A witness may be qualified based on any one or more of the qualities listed in Rule 702 — knowledge, skill, experience, training or education. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (Sullivan, J.). The court must then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). The expert can testify only "on issues or subject matter[s] within his or her area of expertise." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (Vitaliano, J.) (citing *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 80 (2d Cir. 1997)). An expert qualified in one subject is not automatically qualified in other subjects. *See 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 642 (S.D.N.Y. 2014) (Faila, J.). Testimony on other subjects outside his or her area of expertise is prohibited under Rule 702. *Id.*

## II. Reliability of Expert Testimony

If a witness is qualified, the court must ensure that the witness will testify to knowledge that both "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *see Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). "Subjective methodology, as well as testimony that is insufficiently connected to the facts of the case" can serve as "grounds for rejection of expert testimony." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) (Weinstein, J.). The Supreme Court has stressed that "nothing in either *Daubert* or the Federal

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (expert testimony should be excluded when it is "speculative or conjectural") (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702" mandate exclusion of the opinion. *Amorgianos,* 303 F.3d at 266.

**III. Relevance of Testimony**

Finally, the Court must determine that the expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In other words, the testimony must be relevant and helpful. *See In re Zyprexa*, 489 F. Supp. 2d at 283. Furthermore, a court should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)).

## DISCUSSION

**I. Dr. Richard Lucas**

Plaintiff proffers Dr. Richard Lucas as an expert in clinical psychology and forensic psychology. Dr. Lucas is a staff psychologist at the Steuben County Community Mental Health Center in Corning, New York. (Lucas C.V. 1, ECF No. 209-2). He is Plaintiff's treating clinical psychologist. (Lucas July '19 Ltr. 3, ECF No. 209-3). He holds a Ph.D. in Clinical Psychology; Master's degree in Psychology from the University of Texas at Austin; and a Bachelor of Science degree in Humanities and Science from the Massachusetts Institute of Technology.

(Lucas C.V. 1, ECF No. 209-2).

Dr. Lucas produced expert reports that (1) diagnosed Plaintiff with PTSD by applying criteria from the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-V"), (Lucas July '19 Ltr., ECF No. 209-3); (2) opined on Plaintiff's concentration and ability to work *Id.* at 2–3; and (3) rebutted the conclusions of the forensic psychology tests administered and interpreted by the Government's rebuttal expert, Dr. Barry Rosenfeld, (Lucas Jan. '23 Ltr, ECF No. 209-5).

The Government does not challenge Dr. Lucas' expertise to testify on his diagnosis of Plaintiff's PTSD. Instead, the Government seeks to preclude his opinion on Plaintiff's ability to work and his opinion on forensic psychology. (Def. Mot. 13–19, ECF No. 207). As explained below, the Court grants the Government's motion.

**A. Testimony on Plaintiff's Ability to Work**

Dr. Lucas is qualified to testify regarding clinical observations that informed his PTSD diagnosis of Plaintiff. (Lucas July '19 Ltr. 2–3, ECF No. 209-3). The Government does not challenge this testimony. (Def. Reply 4, ECF No. 226). Dr. Lucas is not qualified, however, to testify as to how or why his clinical observations affected Plaintiff's daily functioning or at work.

In his report, Dr. Lucas compares his clinical observations of Plaintiff to criteria A through H of DSM-V to determine whether Plaintiff has PTSD. (Lucas July '19 Ltr. 2–3, ECF No. 209-3). After a thorough review, Dr. Lucas concludes that Plaintiff meets the "full criteria for a diagnosis of Post-Traumatic Stress Disorder." *Id.* at 3. Criterion G requires, "[t]he disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* at 3–4. Dr. Lucas found that Plaintiff's "academic, work and general day to day functioning have clearly been markedly impaired," as he had to stop running his business, could not complete school, has been unable to sleep, is on edge in public

settings, and suffers from depression. *Id.* at 2–3. In his deposition, Dr. Lucas discussed Plaintiff's inability to work and concentrate. (Lucas Tr. 268:15–20; 269:5–17, ECF No. 209-6).

Dr. Lucas is not qualified to testify as an expert regarding Plaintiff's ability to work for three reasons. *First,* Dr. Lucas is a clinical psychologist, not a vocational expert. (Lucas C.V., ECF No. 209-2). His C.V. does not indicate any experience as a vocational or functional expert. *Id.* *Second*, Dr. Lucas did not administer any tests to evaluate Plaintiff's concentration or functional ability. (Lucas Tr. 270:9–14; 270:21–23, ECF No. 209-6). Absent these evaluations, Dr. Lucas's testimony concerning the extent to which Plaintiff's PTSD affected his ability to work would be based on speculation. *See United States v. Ray*, 583 F. Supp. 3d 518, 541 (S.D.N.Y. 2022) (Liman, J.) (precluding expert testimony where expert, *inter alia*, failed to administer tests relevant to proposed testimony). *Third*, any opinion about Plaintiff's ability to work would not be based on Dr. Lucas's purported expertise, rather it would be based on common sense principles unrelated to his expertise. *Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 428 (S.D.N.Y. 2015) (Forrest, J.) (precluding expert testimony "based largely on 'common sense' opinion"). This type of speculative testimony, based on common sense rather than a methodology, is reflected in Dr. Lucas's deposition. He stated, "I don't know how you can sustain work or concentration if your sleep is as subpar as his has been." (Lucas Tr. 268:16–20, ECF No. 209-6).

Dr. Lucas is qualified, however, to testify regarding genuine clinical observations; such as Plaintiff being "on edge," showing a fragmentary memory, "wall[ing] off his affect," or suffering from a "deep depression." (Lucas July '19 Ltr. 2–4, ECF No. 209-3); *see U.S. v. Finley*, 301 F.3d 1000, 1014, 1014 n.21 (9th Cir. 2002) (noting clinical observations include physical and verbal cues that a clinical psychologist is trained to spot and evaluate). He may be

able to testify to Plaintiff's inability to sleep and lack of concentration during sessions, if based on sufficient observations of Plaintiff. (Lucas July '19 Ltr. 2–4, ECF No. 209-3).

Dr. Lucas cannot testify as to why or how Plaintiff has "stop[ped] running his business," Plaintiff's failure "to complete his collegiate course of studies," (Lucas July '19 Ltr. 3–4, ECF No. 209-3), or his "ab[ility] to concentrate in a workplace setting," (Lucas Tr. 269:5–17, ECF No. 209-6). Plaintiff argues that Dr. Lucas is not offering a formal vocational assessment, but rather he is testifying regarding "clinical observations about Plaintiff's functional limitations due to PTSD." (Pl. Opp. 10, ECF No. 218). These opinions, however, go beyond the scope of clinical observations and are beyond the scope of his expertise. *See Gaines v. Astrue*, 2011 WL 3918160, at *14 (S.D.N.Y. July 22, 2011) (Fox, M.J.), report and recommendation adopted, 2011 WL 3837137 (S.D.N.Y. Aug. 30, 2011) (Rakoff, J.) ("Clinical means pertaining to . . . or founded on actual observation and treatment of patients.") (cleaned up).

For these reasons, Dr. Lucas is precluded from testifying regarding Plaintiff's ability to work or concentrate when not based on clinical observations.

### B. Testimony on Forensic Psychology

Dr. Lucas is precluded from testifying on the forensic psychology tests administered by Dr. Barry Rosenfeld for two independent reasons. Procedurally, the portions of Dr. Lucas's January 9, 2023, letter discussing the forensic psychology tests administered by Dr. Barry Rosenfeld are improper surrebuttal testimony.[1] Substantively, Dr. Lucas is not qualified to testify on this subject. He is not a forensic psychologist and he admits that he has no experience with the tests administered and interpreted by forensic psychologist Dr. Rosenfeld.

---

[1] The Government does not challenge Dr. Lucas's surrebuttal testimony regarding Dr. Ilene Zwirn, however, it is improper rebuttal testimony for the same reasons as Dr. Lucas's testimony about Dr. Rosenfeld.

### 1. Dr. Lucas's Opinions are Procedurally Improper

*First*, Dr. Lucas's opinions on forensic psychology in his January 9, 2023, letter are improper surrebuttal testimony. Federal Rule of Civil Procedure 26(a)(2)(D)(ii) governs rebuttal reports. "Absent a stipulation or a court order, the disclosures must be made" within 30 days after the other party's disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter" of the other party's expert. Fed. R. Civ. P. 26(a)(2)(D)(ii); *Hines v. BMG Rts. Mgmt. (US) LLC*, 711 F. Supp. 3d 200, 207 (S.D.N.Y. 2024) (Paul Oetken, J.) (holding that a stipulation or court order supersedes the deadlines of Rule 26(a)(2)(D)(ii)). Here, there was a Scheduling Order governing expert discovery deadlines. (ECF No. 101). The Order required Plaintiff's expert disclosures by September 16, 2022, and Defendant's rebuttal disclosures by November 15, 2022. *Id.* It did not contemplate further rebuttals by Plaintiff. *Id.* Further, in the parties' joint letter to the Court, Plaintiff did not request a surrebuttal report despite qualifying the Government's reports as "rebuttal reports." (ECF No. 100).

### 2. Dr. Lucas is Not Qualified to Testify Regarding Forensic Psychology

*Second*, Dr. Lucas's testimony regarding forensic psychology is precluded because Dr. Lucas is not qualified as a forensic psychology expert under Rule 702. Dr. Rosenfeld, the Government's rebuttal expert, administered and interpreted three forensic psychology tests: the MMPI-3, the MENT, and the TOMM.[2] (Rosenfeld Rep. 3, ECF No. 209-18; Rosenfeld Decl. ¶¶ 4, 10, ECF No. 208). Dr. Rosenfeld concluded that the test results provided strong evidence that Plaintiff was exaggerating his memory/concentration problems and psychiatric symptoms. (Rosenfeld Rep. 3, ECF No. 209-18; Rosenfeld Decl. ¶ 13, ECF No. 208). In his surrebuttal

[2] The Minnesota Multiphasic Personality Inventory, Third Edition ("MMPI-3") "is a self-report inventory that includes multiple scales to identify deliberate symptom exaggeration. (Rosenfeld Decl. ¶¶ 4–5, ECF No. 208). The Morel Emotional Numbing Test ("MENT") is "designed to detect fabrication of a specific PTSD symptom (emotional recognition)." *Id.* at ¶¶ 4, 6. The Test of Memory Malingering ("TOMM") is a "visual memory test designed to detect insufficient effort in cognitive testing. *Id.* at ¶¶ 4, 7.

report, Dr. Lucas questions the validity of the F-scale used in the MMPI tests to detect malingering in cases of PTSD, accepts Plaintiff's MENT scores as reliable, and provides alternative explanations for why Plaintiff performed poorly on the TOMM. (Lucas Jan. '23, Ltr. 2–5, ECF No. 209-5). The Government argues that Dr. Lucas is not qualified to testify on this subject because he does not have forensic psychology credentials or experience and he has no experience with the MMPI-3, MENT, or TOMM. (Def. Mot. 15–19, ECF No. 207). Plaintiff did not rebut the Government's arguments. (*See* Pl. Opp., ECF No. 218).

Dr. Lucas disclaims expertise in the field of forensic psychology. In his letter, Dr. Lucas responded, "<u>not</u> as a forensic psychologist but rather as a fact witness who is a generalist." (Lucas '23, Ltr. 2, ECF No. 209-5) (emphasis in original). In his deposition, he affirmed that he is "not an expert in forensic psychology," does not "stand behind [his] opinions or feel like I know what I'm doing" as a forensic expert, and does not know the standard of care for a forensic psychologist. (Lucas. Tr. 66:22–67:5, 98:18–25, 203:11–25, ECF No. 209-6).

Dr. Lucas's self-evaluation of his expertise is not dispositive; his credentials and relevant experience, however, are insufficient. A court "may properly conclude that witnesses are insufficiently qualified . . . because their expertise is too general." *Stagl*, 117 F.3d at 81. His C.V. consists of decades of experience in clinical psychology, but none in forensic psychology. (Lucas C.V., ECF No. 209-2). Unlike Dr. Rosenfeld, Dr. Lucas lacks specific certifications and training in forensic psychology, such as a Board Certification in forensic psychology. (Rosenfeld Decl. ¶¶ 10–11, ECF No. 208). Plaintiff does not offer evidence showing that Dr. Lucas has the credentials or experience in forensic psychology relevant to serve as a general expert witness on the subject.

Additionally, Dr. Lucas lacks the requisite experience with the MMPI-3, MENT, or

TOMM to qualify as an expert. *EEOC v. SkyWest Airlines, Inc.*, 2024 WL 4530127 (N.D. Tex. Oct. 18, 2024) (holding an expert unqualified to opine on another expert's MMPI-3 assessment when he or she has never administered the MMPI-3). Here, Dr. Lucas concedes that he has never administered the MMPI-3, MENT, or TOMM, (Lucas Tr. 171:16–18, 183:14–16, 184:3–10, ECF No. 209-6), and thus his ability to act as an expert on these tests is limited, (Lucas Tr. 306:7–307:15, ECF No. 209-6). In the report, Dr. Lucas questions whether the F-scale used in the MMPI assessment can accurately detect malingering in PTSD cases. (Lucas Jan. '23, Ltr. 2–4, ECF No. 209-5). But he admits that his understanding is based on an older, "rather different" version of the MMPI, the MMPI-2, that Dr. Rosenfeld did not use. (Lucas Tr. 127:14, ECF No. 209-6). He further stated, "it is not known to [him] if the MMPI-3's version of the F scale is based on some, most or all of the original F-scale items." (Lucas Jan. '23, Ltr. 3–4, ECF No. 209-5 (speculating whether the MMPI-3 "inoculated" the issues he identified with the F-scale)). At his deposition, Dr. Lucas could not answer questions about the normal range of F-scores on the MMPI-3 for patients with PTSD or whether Plaintiff's score was abnormal. (Lucas Tr. 314:3–7, 314:20–25, 316:13–21, ECF No. 209-6).

It is Plaintiff's burden to show that it is more likely than not that Dr. Lucas's proposed testimony is admissible. Fed. R. Evid. 702. Dr. Lucas's lack of credentials or experience in forensic psychology and his lack of experience with the three relevant tests administered to Plaintiff make him unqualified to testify as an expert regarding forensic psychology.

## II. Dr. Carlos Figarola

Plaintiff proffers Dr. Carlos Figarola as an expert in adult psychiatry and forensic psychology. Dr. Figarola is a Board Certified Psychiatrist based in Freehold, New Jersey. (Fig. C.V., ECF No. 209-7). Dr. Figarola received his M.D. from Ross University School of Medicine in Dominica, West Indies in 1981. *Id.* at 3. He completed his residency in the Department of

Psychiatry at Cabrini Medical Center in New York City. *Id.* Since 1995, Dr. Figarola has been affiliated with the Centrastate Medical Center. *Id.* at 4.

Dr. Figarola submitted four letters that constitute his expert report.[3] His initial letter, from September 2022, consists of a single page stating that he reviewed two sets of records and concluding that Plaintiff suffers from chronic PTSD due to his incarceration. (Fig. Sept. '22 Ltr., ECF No. 209-8). In January 2023, Dr. Figarola submitted a "Psychiatric Report" for which he reviewed medical records, reports from two of the Government's rebuttal experts, as well as video from the incident. ("Fig. Jan. '23 Ltr.", ECF No. 209-9). The letter recounts Plaintiff's narrative testimony of the incident. *Id.* at 2. It contains the same conclusion that Plaintiff suffers PTSD due to his experience with ICE. *Id.* He provides commentary on the conclusions of the tests administered by Dr. Rosenfeld. *Id.* at 3–4. Dr. Figarola concludes "upon a reasonable degree of psychiatric certainty" that Plaintiff is "ill and disabled as a result of his experience." *Id.* at 8–9. On February 6, 2023, Plaintiff submitted a letter titled: "Addition to the psychiatric report dated 1/02/2023." (Fig. Feb. 6, '23 Ltr., ECF No. 209-10). This letter clarifies that Plaintiff was interviewed twice for the January 2023 report. *Id.* It states that the report represents contemporaneous notes and "[m]uch of the history provided is taken verbatim or closely paraphrases the statements of the interviewee." *Id.* On February 28, 2023, Dr. Figarola submitted a single sentence letter that states, Plaintiff's "prognosis is poor and his condition is chronic and not likely to improve for the remainder of his life." (Fig. Feb. 28, '23 Ltr., ECF No. 209-11).

As to the PTSD diagnosis, Dr. Figarola's September 2022 report restates Dr. Lucas's

---

[3] September 19, 2022 Letter, ECF No. 209-8 ("Fig. Sept. '22 Ltr."); January 2, 2023 Letter, ECF No. 209-9 ("Fig. Jan. '23 Ltr."); February 6, 2023 Letter, ECF No. 209-10 ("Fig. Feb. 6, '23 Ltr."); and February 28, 2023 Letter, ECF No. 209-11 ("Fig. Feb. 28, '23 Ltr.").

opinion, employs no discernable methodology, and is entirely conclusory. His later reports are similarly conclusory. As to forensic psychology, Dr. Figarola's opinion is improper rebuttal testimony and he is unqualified to opine on forensic psychology. For reasons detailed below, Dr. Figarola's testimony is precluded entirely.

### A. Dr. Figarola's Reports on PTSD are Conclusory

#### 1. Dr. Figarola's September 2022 Report is not an independent opinion, lacks a methodology, and is conclusory

Dr. Lucas's September 2022 report is not an independent expert opinion. "While an expert is permitted to rely on 'facts, opinions, and data not of the expert's own making — including analyses performed or findings made by another expert in the case —' he may not 'merely recite another expert's opinion' as his own." *Danaby Rentals, Inc. v. Mt. Hawley Ins. Co.*, 2026 WL 125634, at *15 (S.D.N.Y. Jan. 16, 2026) (Tarnofsky, M.J.) (citing *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015) (McMahon, J.). Plaintiff concedes that Dr. Figarola's September Report is based entirely on Dr. Lucas's report. (Pl. Opp. 11, ECF No. 218). Further, Dr. Figarola's report provides no methodology for how he arrived at his conclusion. *See Crawford v. Franklin Credit Mgmt. Corp.*, 2015 WL 13703301, at *7 (S.D.N.Y. 2015) (precluding expert opinion where the proponent "offer[ed] the Court no information from which the Court could determine the general acceptability" of the expert's methodology). Dr. Figarola's September 2022 report consists only of a conclusion that Plaintiff has PTSD. Where the report simply states the conclusion along with the records reviewed, the Court cannot evaluate the reliability of the expert's opinion, and the opinion is therefore precluded.

**2. Dr. Figarola's Subsequent Reports are Conclusory and Unreliable**

Dr. Figarola's January and February 2023 reports do not satisfy Rule 702 because they are conclusory and do not detail any methodology.[4] Expert reports must contain not only the conclusions of the expert, but also the bases and methodology for how the expert arrived at their opinion. *See Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion."). Neither *Daubert* nor the Rules of Evidence require a district court to admit an opinion "that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Dr. Figarola's January 2, 2023, report concludes that Plaintiff suffers from PTSD. (Fig. Jan. '23 Ltr. 2, 8, ECF No. 209-9). His opinion is "based upon a reasonable degree of psychiatric certainty." *Id.* at 9. Nowhere in the report does Dr. Figarola explain *how* or *why* he concluded that Plaintiff is suffering from PTSD. The facts are connected to the conclusion only by the *ipse dixit* of Dr. Figarola's "reasonable degree of psychiatric certainty." *Id.* Unlike Dr. Lucas's July 2019 report, he does not analyze Plaintiff's symptoms under the DSM-V or any other recognized method of PTSD diagnosis.[5]

The February reports are similarly conclusory. The February 6, 2023, report contains neither a conclusion nor reasoning. Dr. Figarola confirmed this in his deposition, stating it does

---

4 The letters in January and February 2023 are also improper rebuttal reports. Plaintiff's expert reports were due on September 16, 2022. (ECF No. 101). For Dr. Figarola, the parties agreed to a one-week extension, and Plaintiff served Dr. Figarola's initial report on September 23, 2022. (*See* ECF No. 102). Plaintiff did not request leave to file a "reply" or "surrebuttal" report. *Supra*. The latter reports were served months later, after Defendant served rebuttal reports and after the close of expert discovery.

5 In his deposition, Dr. Figarola states that he applied the DSM-V criteria. (Fig. Tr. 68:7–70:6, ECF No. 209-12). His report, however, makes no mention of this and provides the Court with no ability to discern how he applied the DSM-V factors.

not contain additional expert opinion. (Fig. Tr. 143:14–17, ECF No. 209-12). In his final report, on February 28, 2023, Dr. Figarola simply states that Plaintiff's prognosis is poor and his condition is chronic and unlikely to improve for the remainder of his life. (Fig. Feb. 28, '23 Ltr., ECF No. 209-11). There is no explanation for how he arrived at this conclusion. For these reasons, the Court precludes Dr. Figarola's testimony on Plaintiff's PTSD.

**B. Dr. Figarola is not qualified to testify regarding forensic psychology**

In his January 2023 report, Dr. Figarola questions the conclusions of Dr. Rosenfeld, stating that the testing revealed that "PTSD is present and not exaggerated."[6] (Fig. Jan. '23 Ltr. 3–4, ECF No. 209-9). Dr. Figarola is not qualified to testify regarding forensic psychology because he does not have the requisite experience or credentials in the field and lacks expertise with the tests administered to Plaintiff.

Dr. Figarola does not have experience or credentials in the field of forensic psychology. Although it is not necessary for an expert to possess academic credentials to testify, Dr. Figarola lacks the knowledge, skill, experience, or training in forensic psychology to otherwise qualify. Plaintiff argues that an expert with "extensive practical experience" can be qualified "despite the absence of academic forensic credentials." (Pl. Opp. 14, ECF No. 218) (citing *U.S. v. Shipp*, 422 F. Supp. 3d 762, 782–83 (E.D.N.Y. 2019). But Dr. Figarola does not have extensive practical experience. His C.V. shows experience in the field of adult psychiatry, but no experience in forensic psychology. (*See* ECF No. 209-7; *see also* Fig. Tr. 56:22–24, ECF No. 209-12). He admitted that he is not an expert in psychology or forensic psychology. (Fig. Tr. 58:8–13, ECF No. 209-12). Dr. Figarola likewise has no experience administering or interpreting the three

[6] Plaintiff did not move to file a reply or surrebuttal expert report. *Supra*. For the same reasons as Dr. Lucas's January 2023 report, the portions of Dr. Figarola's testimony about Dr. Rosenfeld and Dr. Zwirn are procedurally improper and are therefore precluded.

forensic psychological tests administered by Dr. Rosenfeld. *Id.* at 197:18–24; 198:20–23; 199:3–13; *see SkyWest Airlines, Inc.*, 2024 WL 4530127, at *2. For these reasons, the Court precludes the testimony of Dr. Figarola regarding forensic psychology.

## III. Mr. Paul Gazaleh

Plaintiff proffers Mr. Paul Gazaleh as an economic loss expert to calculate Plaintiff's past and future lost earnings. The parties did not include Mr. Gazaleh's C.V. in their submissions.[7] Mr. Gazaleh's website does not state his education, but it states that he is a Certified Public Accountant licensed in New Jersey and accredited in Business Valuation.[8]

Mr. Gazaleh produced an expert report that estimated the present value of Plaintiff's lost lifetime earnings to be between $2 million and $2.8 million. (Gaz. Rep. 10, ECF No. 209-13). This estimate assumes that Plaintiff would have graduated from college with a degree in computer science or biomedical engineering, obtained a job as a computer engineer or biomedical engineer, received fringe benefits, and is 100% disabled, unable to work for the rest of his life. (Gaz. Rep. 4–6, ECF No. 209-13). The Government challenges each of these assumptions as speculative and unsupported by the record. (Def. Mot. 26–30, ECF No. 207). Plaintiff argues issues with the report go to weight, not admissibility. (Pl. Opp. 16–18, ECF No. 218). For the reasons detailed below, the Government's motion to preclude the testimony of Mr. Gazaleh is granted.

---

7 The Government does not challenge Mr. Gazaleh's qualifications as an expert witness. The Court notes that Mr. Gazaleh has served as an expert witness on the same topic in the District of New Jersey, and assumes Mr. Gazaleh is qualified to render an opinion on the topic of past and future earnings. *See Ghee v. Martin Transport, Ltd.*, 2013 WL 4500333 (D.N.J. Aug. 21, 2013).

8 Gazaleh Consulting, *About* (Oct. 9, 2026), https://perma.cc/7XU4-DU95.

### A. Mr. Gazaleh's Expert Report is Unreliable due to Speculative Assumptions Not Supported by the Record

Calculating lost earnings requires subtracting a plaintiff's post-accident earning power from a plaintiff's earning power absent the injury. *Williams v. United States*, 712 F. Supp. 1132, 1136 (S.D.N.Y. 1989) (Conner, J.) "The benchmark for any such calculations should be the income earned by the plaintiff in prior years, including median income in the years immediately prior to plaintiff's departure from employment." *Dixon v. Reid*, 2025 WL 2417299, at *5 (S.D.N.Y. Aug. 21, 2025) (Vargas, J.). "Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Boucher*, 73 F. 3d at 21–22 (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983) (expert testimony based on assumption that plaintiff would have earned twice his annual income should have been excluded)). Further, testimony "based on too many questionable assumptions . . . in combination" renders expert testimony speculative. *Crawford*, 2015 WL 13703301, at *7 (holding that a "chain of connected assumptions" that plaintiff would graduate medical school, pass licensing exams, and find employment is to too speculative for admissibility as expert opinion).

#### 1. The assumption that Plaintiff will never work again is speculative

Mr. Gazaleh assumes that Plaintiff "will have no future earnings capacity" because he has not worked since his incarceration and Dr. Figarola's report states that Plaintiff is "ill and disabled." (Gaz. Rep. 5–6, ECF No. 209-13). In *Quinones-Pacheco v. American Airlines, Inc.*, the First Circuit held the district court did not err in excluding the testimony of an expert economist who assumed total disability where the "record [was] utterly barren of any evidence that [Plaintiff] was totally disabled." 979 F.2d 1, 6–7 (1st Cir. 1992). Plaintiff concedes that the record established by Mr. Figarola shows that "Plaintiff is not 100% disabled," but argues that

this is a discrepancy that goes to weight, not admissibility. (Pl. Opp. 16–17, ECF No. 218); (Fig. Tr. 231:25–232:12, ECF No. 209-12). The assumption, however, is critical to a reliable opinion that represents an accurate present value of Plaintiff's lost earnings. Here, the record created by Plaintiff's own experts suggests that Plaintiff may one day work again. (Fig. Tr. 231:25–232:12, ECF No. 209-12). Mr. Gazaleh's assumption that Plaintiff is 100% disabled and unable to earn another dollar in his lifetime is speculative and renders the analysis unreliable.

**2. The assumptions that Plaintiff would have earned a bachelor's degree and obtained employment are speculative**

Mr. Gazaleh assumes that Plaintiff would have earned a degree in computer engineering or biomedical engineering and gained employment in one of those industries. (Gaz. Rep. 4, ECF No. 209-13). An expert can consider a plaintiff earning a new set of skills, but that assumption should not represent "a complete break with [Plaintiff's] work history." *Boucher*, 73 F. 3d at 21–22 (holding that sporadic work history could not support an inference that a Plaintiff was "on the verge of a . . . career of clock punching").

Plaintiff argues that any assumption that "he would have earned a degree and obtained employment as a computer engineer is reasonable given his educational trajectory." (Pl. Opp. 17, ECF No. 218). Plaintiff's educational history does not lead to the inference of graduation and future employment in computer or biomedical engineering. Years earlier, Plaintiff took classes at University of Cape Coast in Ghana and Devry College in Queens, New York, but did not earn a degree at either institution. (Pl. Tr. 27:15–28:25, ECF No. 209-15). Beyond the mere fact that Plaintiff had started his studies again, Plaintiff does not provide factual support for the inference that he would graduate. Further, in his report, Mr. Gazaleh does not consider the graduation rates at New Jersey Institute of Technology ("NJIT"), Plaintiff's academic

performance, or Plaintiff's age in reference to graduation and employment rates. *See Crawford*, 2015 WL 13703301, at *7.

The report then compounds the speculation that Plaintiff would graduate with further speculation that he would obtain a job as a biomedical engineer or computer engineer. *See id.* at *7 (speculative assumptions built on top of each other can render testimony speculative). Plaintiff's ability to become a biomedical engineer is not a reasonable assumption as he had abandoned that path when he started studying computer engineering at NJIT. (Pl. C.V., ECF No. 209-16). This assumption creates a flaw that impugns the entire analysis as Mr. Gazaleh uses the midpoint of salaries between a computer engineer and biomedical engineer to estimate Plaintiff's yearly earnings. (Gaz. Rep. 4, ECF No. 209-13). Further, the assumption that Plaintiff would find employment as a computer engineer is based on the speculative assumption that Plaintiff would have graduated with a degree. The assumption is also undermined by Plaintiff's sporadic pre-incident employment, which does not suggest a future of thirty-plus years of steady employment. (Pl. C.V., ECF No. 209-16).

**3. Mr. Gazaleh's assumption that Plaintiff would receive fringe benefits is speculative and unsupported by Plaintiff's work history**

Lastly, Mr. Gazaleh assumes Plaintiff would receive retirement benefits after finding full-time employment. (Gaz. Rep. 6, ECF No. 209-13). The Second Circuit held that it was an abuse of discretion for a district court to admit an expert report that assumed a Plaintiff would receive fringe benefits when there was no evidence in the record that the Plaintiff had ever previously received fringe benefits. *Boucher*, 73 F.3d at 22–23. Plaintiff has never received fringe benefits from his former employer. (Gaz. Rep. 6, ECF No. 209-13; Pl. Opp. 17, ECF No. 218). The assumption that Plaintiff will receive fringe benefits at a job he has never worked, requiring a degree he does not possess, is too speculative for expert testimony under Rule 702.

Mr. Gazaleh's report is based on several speculative assumptions that are conditional upon each other. For these reasons, the Court precludes the testimony of Mr. Gazaleh.

**CONCLUSION**

For the reasons stated above, Defendant United States's motion to preclude the testimony of Plaintiff's expert witnesses is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 206.

SO ORDERED.

Dated: New York, New York
November 4, 2026

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge